**LAW OFFICES**
**SHERMAN & HOWARD L.L.C.**
2800 NORTH CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004-1043
TELEPHONE: (602) 240-3000
FAX: (602) 240-6600
(AZ BAR FIRM NO. 00441000)

Arthur W. Pederson (AZ Bar No. 002821)
(APederson@ShermanHoward.com)
Thomas J. Kennedy (AZ Bar No. 006907)
(TKennedy@ShermanHoward.com)
Michael C. Grubbs (AZ Bar No. 024032)
(MGrubbs@ShermanHoward.com)
Attorneys for Respondents Professional Medical Transport, Inc., and Bob Ramsey

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Labor Relations Board,<br><br>       Applicant,<br><br>v.<br><br>Professional Medical Transport, Inc.,<br><br>and<br><br>Professional Medical Transport, Inc. and its alter ego American Comtrans Ambulance Service, Inc.<br><br>and<br><br>Bob Ramsey, an individual,<br><br>       Respondents. | Case No. MC10-0061-PHX-DGC<br><br>**PROFESSIONAL MEDICAL TRANSPORT, INC.'S MOTION FOR PROTECTIVE ORDER** |

Pursuant to Fed. R. Civ. P. 26(c), Respondents Professional Medical Transport, Inc. ("PMT" or "Respondent"), and Bob Ramsey respectfully move for a protective order from the Court. This motion is filed for the purposes of limiting the scope of discovery sought by applicant National Labor Relations Board ("NLRB") pursuant to NLRB's Application for Order to Enforce Administrative Subpoenas dated May 10, 2010 and June 7, 2010 because the information sought by NLRB is irrelevant, unduly burdensome, and confidential. A proposed form of order is filed simultaneously herewith. A Memorandum of Points and Authorities in support of this motion is

attached hereto and incorporated herein by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

The NLRB's Application for Order to Show Cause Requiring Compliance with Subpoena Ad Testificandum and Subpoenas Duces Tecum (the "Application") contains a simplistic statement of the facts and is designed to cast PMT as unreasonably refusing to cooperate with NLRB's investigation. In reality, the Subpoena Duces Tecum ("SDT") for which the NLRB seeks enforcement seeks 50 separate categories of documents with subparts from PMT. (*See* July 15, 2010 Declaration of James Roeder ("Roeder Declaration") at ¶16, attached to PMT's Memorandum of Points and Authorities in Opposition to NLRB's Application for Order to Enforce Administrative Subpoenas (the "Opposition") as Exhibit B). Of those categories, PMT has already provided responses to 34 of the 50 categories totaling over 3,500 pages of documents. (*Id.* at ¶¶16-17). The NLRB's representations aside, PMT has at all times attempted to cooperate with the NLRB and supply the requested information in such a matter that will permit a fair trial on the merits while at the same time protecting PMT's legitimate business interests.

In its Application, the NLRB references 26 specific categories of documents that it believes are in dispute. As for requests 2, 4, 5, 18, 36, 39, and 41, responsive documents have already been provided to the NLRB, and PMT will continue to supplement its responses to those requests. (Roeder Declaration at ¶18). As for requests 9, 13, 17, and 22, PMT has indicated that no such documents exist. (*Id.* at ¶19). PMT has informed the NLRB that it is in the process of locating and reviewing documents responsive to requests 15, 16, 20, and 21, if any. (*Id.* at ¶20). These documents will be provided to the NLRB after PMT has gathered and reviewed those documents. (*Id.*). Thus, of the 50 categories of documents sought by the NLRB, there are only fourteen categories of documents in dispute in this enforcement proceeding: requests 6, 7, 8, 9, 10, 11, 12, 14, 19, 24, 25, 26, 27, and 38. (the "Disputed Documents"). (*Id.* at ¶21).

PMT seeks protection of the Disputed Documents because (1) the documents contain confidential and proprietary financial, operational, and customer information which, if released to the public, could be used by competitors (and customers) to undermine PMT's competitive position in the marketplace; or (2) otherwise would be extremely burdensome upon PMT to produce, is excessive in scope, and is not relevant to the action instituted by NLRB.

## I.  MEET AND CONFER CERTIFICATION

On June 3, 2010, counsel conferred with NLRB counsel Sandra Lyons regarding the subpoena duces tecum and the concerns that PMT had with the burdensome nature of the request and the confidential information sought. The parties were unable to resolve the issue at that meeting. At the NLRB hearing on June 7, 2010, the parties again went over the subpoena duces tecum requests and were unable to resolve the same issues. Accordingly, counsel certifies that the parties have met and conferred regarding the issues related to this Motion for Protective Order.

## II.  FACTUAL BACKGROUND

For the factual background, please refer to Professional Medical Transport's Memorandum of Points and Authorities in Opposition to the NLRB's Application for Order to Enforce Subpoenas, filed simultaneously herewith at Section I.

## III.  LEGAL ARGUMENT

Fed. R. Civ. P. 26(c) provides that, upon motion and good cause shown, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including...(D) forbidding inquiry into certain matters, or limiting the scope of the disclosure or discovery to certain matters;...(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c). To justify the entry of a protective order, a party need only make a "threshold showing of good cause to believe that discovery will involve confidential or protected information." *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group,*

*Inc.*, 121 F.R.D. 264, 268 (M.D. N.C. 1988). If the trial court finds that the material is confidential and relevant to the proceedings, the trial court should issue a protective order, which may include specific instructions regarding redaction and disclosure procedures and, if necessary, may include orders that "confine attendance at [a]hearing to the persons directly involved in the proceedings, their counsel, experts and witnesses and exclude the general public." *Federal Communications Com. v. Schreiber*, 201 F. Supp. 421, 425 (S.D. Cal. 1962). "The Rules of Civil Procedure are applicable to NLRB proceedings 'so far as practicable.'" *NLRB v. International Medication Systems, Ltd.*, 640 F.2d 1110, 1115 (9th Cir. 1981) (quoting 29 U.S.C. § 160(b)). Any protective order entered by the Court is binding on all parties in the NLRB action, including the Administrative Law Judge. *BE & K Constr. Co.*, 351 N.L.R.B. 451, 456 (N.L.R.B. 2007) (NRLB is bound by District Court's findings).

Courts routinely issue orders granting confidential status to trade secrets and sensitive commercial and other information. *Schreiber*, 329 F.2d at 522 (federal courts have "authority to impose safeguards to prevent the possible disclosure of trade secrets" sought by administrative subpoenas). Although matters of general knowledge cannot be appropriated as secret and confidential, "a trade secret may consist of a combination of elements even though each individual component may be a matter of common knowledge." *Enterprise Leasing Co. of Phoenix v. Ehmke,* 197 Ariz. 144, 149, ¶17, 3 P.3d 1064, 1069 (App. 1999). In fact, "a compilation need only be a slight advance over common knowledge to receive protection." *Id.* at 150, ¶19, 3 P.3d at 1070.

A discovery request is unduly burdensome if "compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *Federal Trade Commission v. Texaco Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977). If a request is unduly burdensome, a district court is authorized to "impose reasonable conditions and restrictions with respect to the production of the subpoenaed material." *Id.* at 881; *see also* Fed. R. Civ. P. 26(c)(1)(C) (giving authority to courts to prescribe a discovery method "other than the one selected by the party seeking discovery"); *Schreiber*, 329 F.2d at 523

("Whenever it is made to appear that a subpoena is so broadly drawn as to be oppressive and unreasonable it is the duty of the court to prevent abuse of its process and to place such limitations upon the subpoena as is just and right under all the circumstances.")

### A. Request Nos. 10, 11, 19 and 24 seek Irrelevant Information

All of the information sought by the SDT in regard to categories 10, 11, 19, and 24 is irrelevant and outside the scope of the underlying charges. (Roeder Declaration at ¶ 22). In order for the information sought in these categories to be discoverable by the NLRB, the NLRB must make a showing that the "the evidence sought relates to or touches the matter under investigation" *NLRB v. Dutch Boy, Inc.*, 606 F.2d 929, 932 (10th Cir. 1979) (internal quotations and citations omitted). Courts have granted relief from administrative subpoenas that they find are overly broad in scope. *See, e.g., E.E.O.C. v. United Air Lines, Inc.,* 287 F.3d 643, 655 (7th Cir. 2002) (reversing the district court's enforcement of a subpoena issued by the EEOC where the subpoena sought documents and information beyond the parameters of the underlying charge of discrimination). In the instant case, the NLRB has made no showing of any kind connecting the information sought in these requests to the allegations in the NLRB's complaint against PMT.

For example, Request 10 seeks "[d]ocuments showing the name, job classification, wage rates, and dates of hire and end of employment of each employee employed by Respondent PMT since January 2009." PMT has provided the NLRB with a list of employees who are part of the alleged bargaining unit. (Roeder Declaration at ¶ 23). However, the NLRB cannot show that this information is relevant insofar as it relates to those employees outside the bargaining unit.[1] *See, e.g., Ohio Power Co.,* 216 NLRB 987, 991 (1975) ("where the request is for information with respect to matters occurring outside the [bargaining] unit, the standard is somewhat narrower (as where

---

[1] The bargaining unit alleged includes: "All full-time field paramedics, EMTs, IEMT's, and registered nurses, but excluding administrative staff individuals, support services, personnel not directly operating in the field as an EMS provider, guards, office clerical, and supervisors as defined under the Act." Exhibit D to the Opposition at ¶ 5(a).

1  the precipitating issue or conduct is the subcontracting of work performable by
2  employees within the appropriate unit) and relevance is required to be somewhat more
3  precise"); *see also Richmond Health Care*, 332 NLRB 1304, 1305, fn. 1 (2000);
4  *Associated Ready Mixed Concrete*, 318 NLRB 318, 318 (1995). Accordingly, PMT
5  should not be ordered to disclose any information regarding its employees who are not
6  part of the alleged bargaining unit.
7       Request 11 seeks "[d]ocuments showing the name of each employee listed in
8  response to paragraph 10 who has also worked for Respondent Comtrans at any time
9  since January 2009, including each such person's job classification, wages rates, and
10 dates of hire and end of employment with Respondent Comtrans." This request seeks
11 information on employees outside of the bargaining unit. (Roeder Declaration at ¶ 24).
12 In fact, this request seeks information on management-level employees, which are not
13 even covered by the National Labor Relations Act and whose information is not the
14 proper subject of the NLRB's subpoena. *Walla Walla Union Bulletin, Inc. v. NLRB,* 631
15 F.2d 609, 612 (9th Cir. 1980) (holding that "managerial employees have been judicially
16 excluded from the [National Labor Relations] Act's coverage."). PMT should not be
17 ordered to disclose any information in response to Request 11.
18      Request 19 seeks "[d]ocuments as will show the name of the principal
19 bookkeepers and/or accountants used by Respondent PMT." The NLRB cannot show
20 that this information is relevant to the allegations in the underlying Complaint. (Roeder
21 Declaration at ¶ 24). The reason behind this request can only be for purposes of
22 intimidation and harassment. Why else would the NLRB seek information relating to
23 PMT's accountants other than intimidate PMT by threatening to subpoena PMT's
24 accountants for PMT's most confidential and sensitive financial data? PMT should not
25 be ordered to disclose any information in response to Request 19.
26      Request 24 seeks "[a]ll licenses, permits, certificates of need or other documents
27 constituting an authorization to operate any business held by or issued to Respondent
28 PMT, and/or Respondent Comtrans, and/or Bob Ramsey and/or Pat Cantelme, and all

1  applications and other documents filed by Respondent PMT, and/or Respondent
2  Comtrans, and/or Bob Ramsey and/or Pat Cantelme with respect to such licenses,
3  permits, certificates or other authorizations to operate." This request seeks information
4  on businesses that are not parties to the underlying Complaint. (Roeder Declaration at ¶
5  26). The NLRB cannot show that this information is relevant to the allegations in the
6  Complaint. Accordingly, Request 24 should not be enforced.

7      In sum, PMT should not be required to provide any information responsive to
8  Request Nos. 10, 22, 19, and 24. Without waiving its objection to the disclosure of the
9  foregoing information, to the extent that the Court orders discovery of any of the
10 foregoing categories, PMT requests that the any information disclosed be limited to
11 production only to the ALJ and be treated as confidential to safeguard the sensitive
12 information contained therein.

    **B.    Request Nos. 8, 14, and 38 seek Information that is Unduly Burdensome**

15     Request 38 seeks "[d]ocuments, including, but not limited to, personnel and
16 similar files and their contents, as will show any employee who was discharged by
17 Respondent PMT and the underlying reason for the discharge, during the period of July
18 2008 through the present." For the reasons set forth below, this request is unduly
19 burdensome.

20     In order to show that a subpoena is unduly burdensome, the subpoenaed party
21 must show that the subpoena seriously disrupts regular business operations. See *EEOC*
22 *v. Maryland Cup Corp.,* 785 F.2d 471, 477 (4th Cir.), cert. denied 479 U.S. 815 (1986);
23 *NLRB v. Carolina Food Processors,* 81 F.3d at 513. In making the determination of
24 whether a subpoena is unduly burdensome, courts must "weigh the likely relevance of
25 the requested material to the investigation against the burden to [the respondent]
26 producing the material." *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir.
27 1994); *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981); *EEOC v.*
28 *South Carolina National Bank*, 562 F.2d 329, 332 (4th Cir. 1977).

Gathering and reviewing the documents requested by the SDT would be an enormous undertaking and create serious difficulties for PMT. (Roeder Declaration at ¶ 28). The information requested would require individualized review of hundreds of personnel files to determine who was terminated and for what reason. (*Id.* at 28). This would cause days of disruption to the normal business duties of PMT's human resources personnel. (*Id.* at 28). Accordingly, this request should not be enforced. Without waiving its objection to the disclosure of the foregoing information, to the extent that the Court orders discovery of Request 38, PMT requests that the any information disclosed be treated as confidential to safeguard the sensitive information contained therein.

Additionally, Section 10(b) of the National Labor Relations Act provides that "no complaint shall be based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C. § 160(b). Here, the underlying Complaint was filed in April 2010. This request seeks information dating back to July 2008, well prior to the six month statute of limitation. Accordingly, the information is not relevant to the allegations in the Complaint and this request should not be enforced.

Moreover, responding to Request 8 and 14 would require manual review of all of PMT's invoices since January 2009 in order to protect and redact confidential patient information that is protected by the Health Insurance Portability and Accountability Act of 1996. (Roeder Declaration at ¶ 27). PMT has performed tens of thousands of transports in that time period. (*Id.*). It would require hundreds of hours of time to gather and review the documents. (*Id.*). Accordingly, the request is unduly burdensome.

### C.  Requests Nos. 6, 7, 8, 12, and 27 Seek Confidential Information

Requests 6, 7, 8, 12, and 27 seek confidential and proprietary information.[2]

---

[2] The document requests are as follows:
  6.  Documents showing the equipment, land, building, and assets owned, leased, or otherwise used by Respondent PMT, along with the location and ownership or leasehold interest in such, including vehicle registrations for all vehicles, and lease, sublease, rental, or

(Roeder Declaration at ¶ 29). Much of the information sought by the NLRB in these request would cause harm to PMT's business if it were to become available to PMT's competitors. (*Id.* at ¶ 37). In fact, one of PMT's competitors, Southwest Ambulance, had a representative at the hearing in the NLRB action that was held in June 2010, presumably for the sole purpose of attempting to acquire confidential information. (*Id.*). Ambulance service in Maricopa county is an extremely competitive business with profit margins of 5% or less. (*Id.* at ¶ 38). If specific customer lists became public information, PMT's competitors would be able to target their marketing efforts to the customers and that would cause significant damage to PMT. (*Id.*). One illustration of this competitive environment happened when PMT's competitor became aware of PMT's intention to market to a pediatric facility with a specialty equipped ambulance. (*Id.* at ¶ 37). The competitor then immediately put a similar unit in service before the vehicle PMT ordered for this project arrived. (*Id.*). For these types of reasons, PMT's confidential information merits protection.

Request 27 seeks disclosure of confidential customer information. (*Id.* at ¶ 30). Courts have recognized that customer lists, and information regarding a company's relationship with its customers, developed through effort and expense by the company,

---

purchase agreements.
7.   Copies of all contracts, leases or other agreements, including employment agreements, subcontracts, purchase and sales agreements, notes, loans, and security agreements, between Respondent PMT and Respondent Comtrans; between Respondent PMT and Bob Ramsey: and between Respondent Comtrans and Bob Ramsey.
8.   Documents, including facility lists, accounting ledgers, or accounting summaries, showing work performed by Respondent PMT, for whom the work was performed, and the type of work performed, since January 2009.
12.   Documents showing any financial transaction between Respondent PMT and Respondent Comtrans since January 2009, including any transfer of funds, assets, capital, equipment, or employees, and the purpose of such transfer; the purchase, rental, lending, or lease of equipment, land, or assets, including, but not limited to, any agreements for Respondent Comtrans to use Respondent PMT's vehicle bays, mechanic shop, parking spots, or office space; or loans between the two companies.
27.   Documents showing which customers, clients, or companies to which Respondent PMT provided general transport services and 911/Operations since January 2009.

are "trade secrets" within the protection of the Uniform Trade Secrets Act, A.R.S. § 44-401, *et seq. See, e.g. Prudential Ins. Co. v. Pochiro*, 153 Ariz. 368, 371, 736 P.2d 1180, 1183 (App. 1987) ("A list of customers, if their trade and patronage have been secured by years of business effort and advertising and the expenditure of time and money, constitutes an important part of a business and is in the nature of a trade secret."); *Inter-Tel, Inc. v. Fulton Communs. Tel. Co.*, 2007 U.S. Dist. LEXIS 43219 at *20 (D. Ariz. June 12, 2007) (holding that "Inter-Tel's customer lists are clearly in the nature of a trade secret" because the information "is not generally known outside of Inter-Tel's sales organization, as well as the affirmative acts taken by Inter-Tel to protect the secrecy of this information").

The customer data sought by the NLRB for the period from January 2009 to the present contains competitively sensitive information. (Roeder Declaration at ¶ 30). The information sought includes the identification of PMT's clientele, which information PMT considers and treats as confidential, proprietary, and commercially sensitive. (*Id.*). PMT does not share, disclose, or provide access to this information to the public, its customers, its competitors, or the Union. (*Id.*). Public disclosure of this information would create a risk of significant injury to PMT because PMT's competitors would be able to use such information, to which they would not otherwise have access, to compete for PMT's existing and prospective customers. (*Id.* at ¶ 31).

Requests 6, 7, 8, and 12 seek information on the detailed financial status of PMT, which contains competitively sensitive financial information. (*Id.* at ¶ 32); *Ehmke,* 197 Ariz. at 149-50, ¶18, 3 P.3d at 1069-70 (holding that a company's "financial information" is entitled to trade secret protection where the company has taken steps to safeguard the information and there has been no public disclosure of the information); *see also In re Electronic Arts, Inc.*, 298 Fed. Appx. 568, 569-70 (9th Cir. 2008) (finding that district court "erred as a matter of law" in unsealing "confidential and commercially sensitive information" and granting petition for writ of mandamus and ordering information filed under seal) (internal citation omitted). By comparing the agreements,

financial documents, and leases sought by Request 12, competitors could discern PMT's internal pricing and profit margins. (*Id.* at ¶ 33). PMT considers and treats this information as confidential, proprietary, and commercially sensitive. (*Id.* at ¶ 34). Only employees, such as high level managers, have access to this information. (*Id.*). PMT does not share this information or provide this information to the public, its customers, its competitors, or the Union. (*Id.* at ¶ 35). Public Disclosure of this information would create a risk of significant competitive injury to PMT. (*Id.* at ¶ 36). For example, competitors could use this information, to which they would not otherwise have access, to compete for PMT's customers with an unfair advantage by knowing PMT's internal pricing and profit margins. (*Id.*).

Based on the foregoing, PMT requests that any documents and information it provides responsive to Requests 6, 7, 8, 12, and 27 be subject to a confidentiality order.

### D. PMT Cannot Respond to Requests Nos. 25 and 26 as Written

Requests 25 and 26 seek information relating to "routes" in certain areas and the discontinuance of such "routes." Because ambulances do not operate on a route system, PMT is unable to respond to this request. (Roeder Declaration at ¶ 40). Ambulances respond to emergencies, and do not follow a set route as would a delivery truck, etc. (*Id.*). Enforcement of an administrative subpoena may be declined if the administrative subpoena is vague. *Bowles v. Abendroth*, 151 F.2d 407, 408 (9th Cir. 1945).

### E. PMT Requests that the Court enter the Protective Order

In its Protective Order filed simultaneously herewith, PMT sets forth proposed procedures for marking documents confidential and for ensuring that such documents are protected from disclosure, which includes procedures to exclude the public from any hearing or proceeding in which information that is confidential is to be disclosed.  PMT respectfully requests that the Court enter the Protective Order.

### IV. CONCLUSION

For the foregoing reasons, PMT requests that the Court enter a Protective Order prohibiting unauthorized disclosure with respect to the information produced by PMT

for categories 6, 7, 8, 9, 10, 11, 12, 14, 19, 24, 25, 26, 27, and 38 in the form filed simultaneously herewith. PMT also requests that the Court grant PMT until sixty days following resolution of this Motion to provide the information sought, as limited by the Court's order.

DATED: July 15, 2010

**SHERMAN & HOWARD L.L.C.**

By /s/ Michael C. Grubbs
    Arthur W. Pederson
    Thomas J. Kennedy
    Michael C. Grubbs
    2800 North Central Avenue, Suite 1100
    Phoenix, Arizona 85004-1043
    Attorneys for Professional Medical Transport, Inc., and Bob Ramsey

I hereby certify that on _____, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

COPY of the foregoing hand-delivered on July 15, 2010, to:

David A. Kelly, Deputy Regional Attorney
Sandra L. Lyons, Field Attorney
Mary G. Davidson, Field Attorney
National Labor Relations Board, Region 28
2600 North Central Avenue, Suite 1800
Phoenix, Arizona 85004

By: /s/ Tisha A. Davis