**LAW OFFICES**
**SHERMAN & HOWARD L.L.C.**
2800 NORTH CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004-1043
TELEPHONE: (602) 240-3000
FAX: (602) 240-6600
(AZ BAR FIRM NO. 00441000)
Arthur W. Pederson (AZ Bar No. 002821)
(APederson@ShermanHoward.com)
Thomas J. Kennedy (AZ Bar No. 006907)
(TKennedy@ShermanHoward.com)
Michael C. Grubbs (AZ Bar No. 024032)
(MGrubbs@ShermanHoward.com)
Attorneys for Respondents Professional Medical
Transport, Inc., and Bob Ramsey

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Labor Relations Board,<br><br>    Applicant,<br><br>v.<br><br>Professional Medical Transport, Inc.,<br><br>and<br><br>Professional Medical Transport, Inc. and its alter ego American Comtrans Ambulance Service, Inc.<br><br>and<br><br>Bob Ramsey, an individual,<br><br>    Respondents. | Case No. MC10-0061-PHX-DGC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NLRB'S APPLICATION FOR ORDER TO ENFORCE ADMINISTRATIVE SUBPOENAS** |

Respondents Professional Medical Transport, Inc., and Bob Ramsey respectfully submit this Opposition to the National Labor Relations Board's ("NLRB") Application for Order Requiring Obedience to administrative subpoenas.

**I.     INTRODUCTION AND FACTUAL BACKGROUND**

Respondent Professional Medical Transport, Inc. ("PMT" or "Respondent") is an ambulance service company. Mr. Bob Ramsey is one of the shareholders of PMT and has been since 2005. PMT engages in ambulance services in Maricopa County.

PHOENIX \ 782354.2 \ 087465.002

PMT has emergency service contracts with the cities of Scottsdale, Paradise Valley, Tempe, Chandler, and Guadalupe.

Throughout the past two years, the NLRB has sought to impose a union on a group of nearly 200 PMT employees who have not chosen that union. Specifically, the NLRB has continually attempted to force PMT to recognize and bargain with the Independent Certified Emergency Professionals of Arizona, Local No. 1, ("ICEP" or "Union"), despite the Union's lack of majority support. PMT's evidence of lack of majority status has never, even to this day, been contradicted by the NLRB or the Union. (*See* Exhibit A, PMT's March 30, 2010 Motion for Summary Judgment).

In the NLRB's view, despite evidence that the Union does not now enjoy and never has obtained majority status, PMT must still engage in bargaining that is clearly *prohibited* by the National Labor Relations Act. For nearly two years now, PMT has been asking for some evidence of majority status, which has yet to be provided by the Union. (Exhibit B, ¶ 12, Declaration of Jim Roeder, dated July 14, 2010). In fact, in April 2010, the ICEP's President, Mr. Joshua Barkley, agreed to a neutral third-party card check of the ICEP's authorization cards as of the time of recognition. *Id.* at ¶ 13. However, he has since refused PMT's subsequent offers to set up this neutral card check. *Id.* Despite the Union's lack of majority support, the NLRB continues to pursue unsubstantiated allegations of unfair labor practice charges against PMT.

Among the NLRB's most dubious allegations throughout this dispute is the one that brought the NLRB to this Court. The NLRB alleges in its most recent complaint against PMT that PMT and American ComTrans Ambulance Service, Inc. ("ComTrans") are labor law "alter egos" and that ComTrans was established by PMT as a disguised continuation of PMT in March 2008. Further, the NLRB alleges that PMT established ComTrans in order to evade its responsibilities under the Act. These allegations regarding alter ego status are reckless, improper and in direct contradiction of the facts that have already been provided to the NLRB. (*See* Exhibit C,  PMT's May

28, 2010 Motion for Partial Summary Judgment). Accordingly, the NLRB's subpoena requiring hundreds to thousands of hours of work to locate, review, and produce documents allegedly responsive to the requests should not be enforced.

## II. LEGAL ARGUMENT

The NLRB's subpoena enforcement papers ask the Court to enforce two subpoenas involving Professional Medical Transport. First, the NLRB asks for enforcement of the subpoena duces tecum directed to PMT's Custodian of Records and dated May 10, 2010 ("SDT"). Next, the NLRB seeks enforcement of the subpoena ad testificandum directed to Bob Ramsey and dated April 28, 2010 ("SAT" or "subpoena to testify"). For the reasons outlined below, the subpoenas should not be enforced. In the alternative, the documents sought in the SDT should be limited and subject to a protective order.

### A. The Subpoena Duces Tecum should not be enforced because the Claims Regarding ComTrans are Frivolous.

On May 28, 2010, PMT filed a Motion for Summary Judgment with the NLRB outlining the reasons why the NLRB's allegations regarding alter ego status could not be true. (Exhibit C). The Motion contained three primary arguments: 1) ComTrans was not created in 2008 as a "disguised continuation" of PMT; 2) ComTrans was not created for the purpose of evading PMT's bargaining obligations; and 3) the remaining factors for alter ego status were met. The NLRB in Washington, D.C. refused to rule on the Motion. At the opening of the hearing, the Administrative Law Judge denied PMT's Motion after brief oral argument. Taking into account the frivolous nature of the underlying NLRB allegation, the subpoena duces tecum should not be enforced.

Generally, alter ego cases arise, where one entity has disappeared and has been succeeded by another that is indistinguishable from or a "disguised continuance" of the predecessor. *Advance Electric,* 268 NLRB 1001, 1004 (1984). Indeed, in the underlying Complaint, the NLRB alleged that PMT established ComTrans in March 2008 as a disguised continuation of PMT. Complaint in case 28-CA-22747, *et al.*, attached hereto

as Exhibit D at ¶ 2(h). In fact, ComTrans has been in existence as a certificated ambulance service, in some form, with continuous operations since <u>1985</u> when it became Maricopa County's first certified ambulance service. (*See* Exhibit C at 5). PMT's major shareholder, Bob Ramsey, has owned ComTrans since <u>before</u> he obtained ownership of PMT. *Id.* Accordingly, it is not possible that ComTrans was established in 2008 as alleged.

The underlying complaint also alleged that ComTrans was established for the purposes of evading PMT's responsibilities under the National Labor Relations Act ("NLRA"). This allegation is similarly without merit. Here, it is temporally impossible that PMT or its owners established ComTrans in order to avoid PMT's obligations under the NLRA. Again, PMT's owner owned ComTrans prior to owning PMT. (Exhibit C at 5). Further, the Union was not in existence until 2006. *Id.* at 6. ComTrans was started in 1985 and has held a certificate of necessity since that time from the Arizona Department of Health Services. ComTrans was acquired by Bob Ramsey in May 2003. *Id.* Accordingly, there are no facts under which the NLRB can establish that PMT created ComTrans for the improper purpose of avoiding its bargaining or other obligations under the Act.

In an alter ego analysis, the NLRB considers whether two entities have substantially identical ownership, management and supervision, business purpose, operation, customers, and equipment. *Fallon-Williams, Inc.*, 336 NLRB 602, 602 (2001).[1] ComTrans and PMT do share some common ownership. Exhibit C at 2. However, the NLRB cannot establish that the remaining factors required for alter ego status are met. Indeed, the whole alter ego analysis applied by the NLRB in the underlying case is flawed and suspect under NLRB law. In *Cadillac Asphalt Paving, Inc.,* 349 NLRB No. 5 (2007), the NLRB described an alter ego relationship as one where ". . . one entity ceases operations and a second entity begins the same or similar

---

[1] Counsel will supply the Court with copies of the NLRB decisions at the hearing, if necessary.

operations." The Developing Labor Law, (5th Edition 2008), Cumulative Supplement (ABA Section on Labor and Employment Law) at 226. That is not the case here; both PMT and ComTrans have separate continuing operations.

Despite the uncontroverted evidence that ComTrans cannot exist as a disguised continuance of PMT and was not created for the purpose of avoiding PMT's bargaining obligations, the NLRB continues to pursue this dubious theory and subject PMT to severe litigation costs and distraction from the normal course of business. The vast majority of the documents that the NLRB is seeking in this enforcement action relate to this "alter ego" issue. This baseless allegation should not subject PMT to continued litigation and thousands of dollars in lost productivity from management employees who are being forced to deal with this issue.

**B.     The Subpoena Duces Tecum should not be enforced because it seeks information that is irrelevant, unduly burdensome, and confidential**.

Regardless of the merits of the allegations, or lack thereof, the NLRB's SDT is so broad, seeks confidential information, and subjects PMT to such a burden, that it should not be enforced.

Under Ninth Circuit law, a district court's scope of inquiry in an agency subpoena enforcement proceeding is limited to: 1) whether Congress has granted the authority to investigate; 2) whether procedural requirements have been followed; and 3) whether the evidence sought is relevant and material to the investigation. *NLRB v. North Bay Plumbing, Inc.,* 102 F.3d 1005, 1007 (9th Cir. 1996). If those conditions are met, the subpoena may be enforced unless the responding party can prove that the inquiry is unreasonable because it is unduly burdensome or overly broad. *North Bay,* 102 F.3d at 1008 (emphasis added). Because this standard is disjunctive, it follows that a party opposing a subpoena need only demonstrate that the subpoena is overly broad or unduly burdensome – not both.

Here, the NLRB fails to acknowledge in its Application that PMT has provided thousands of pages of documents responsive to the NLRB's subpoenas. In fact the

NLRB issued a subpoena duces tecum to PMT just two weeks prior to the SDT for which the NLRB seeks enforcement. (Exhibit B at ¶ 15). PMT fully complied with the April 28, 2010 subpoena, which sought documents responsive to 23 separate requests. *Id.* PMT has provided, to date, approximately 3500 pages of documents to the NLRB in relation to the underlying complaint and continues to update its subpoena responses. (Exhibit B at ¶ 17).

The NLRB also ignores the fact that the SDT for which it seeks enforcement asks for 50 separate categories, with subparts, of documents. Of those categories, PMT has provided responses to 34. (Exhibit B at ¶ 16). Thus, all told, PMT has provided responsive documents (or indicated that no responsive documents exist) to 57 of the 73 total categories of requests. (Exhibit B at ¶ 16).[2] The NLRB's implication that PMT is failing to cooperate is simply not true.

In its Application and Memorandum, the NLRB directs the Court and PMT to 26 specific categories of documents that it believes are in dispute. *See* Application at 6; NLRB Memorandum of Points and Authorities at 11. There are currently just 14 categories of documents in dispute in this enforcement proceeding - requests 6, 7, 8, 10, 11, 12, 14, 19, 24, 25, 26, 27, and 38. (Exhibit B at ¶ 21). As for requests 2, 4, 5, 18, 36, 39, and 41, responsive documents have been provided to the NLRB and PMT will continue to supplement its responses to those requests. (Exhibit B at ¶ 18). As for requests 9, 13, 17, and 22, PMT has indicated that no such documents exist. (Exhibit B at ¶ 19). PMT is willing to provide and is in the process of locating and reviewing documents, if any, responsive to requests 15, 16, 20, and 21 and these will be provided to the NLRB as soon as they are located and reviewed. (Exhibit B at ¶ 20). The NLRB's application for enforcement of the following document requests should be denied.

---

[2] The U.S. Supreme Court has clearly recognized that discovery requests can be oppressive and has accordingly limited discovery in civil cases. *See* Fed. R. Civ. P. 26(c). The discovery requests here greatly exceed anything permitted under the federal rules.

> i. *Requests #10, 11, 19 and 24 seek irrelevant information*

Here, much of the information sought by the SDT is irrelevant and outside the scope of the underlying charges. Courts nationwide have denied enforcement of subpoenas that sought information outside the cope of the underlying charges. *See EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994) (affirming modification of an EEOC subpoena and rejecting the EEOC's position that it is entitled to any material which it deems relevant in its discretion). Courts granted relief from administrative subpoenas that they find are overly broad in scope. *See E.E.O.C. v. United Air Lines, Inc.,* 287 F.3d 643, 655 (7th Cir. 2002) (reversing district court's enforcement of subpoena issued by the EEOC where the subpoena sought documents and information beyond the parameters of the underlying charge of discrimination). These EEOC cases apply equally in NLRB enforcement proceedings. *See NLRB v. Bakersfield Californian,* 128 F.3d 1339, 1341 (9th Cir. 1997) (citing case involving EEOC subpoena enforcement proceeding and holding in a subpoena enforcement context that "42 U.S.C. § 2000e-9 gives the EEOC the same investigative powers as those provided the National Labor Relations Board in 29 U.S.C. § 161").

Request 10 seeks "[d]ocuments showing the name, job classification, wage rates, and dates of hire and end of employment of each employee employed by Respondent PMT since January 2009." PMT has provided a list of employees who are part of the alleged bargaining unit. (Exhibit B at ¶ 23). However, the NLRB cannot show that this information is relevant insofar as it relates to those employees outside the bargaining unit.[3] (Exhibit B at ¶ 24).

Request 11 seeks "[d]ocuments showing the name of each employee listed in response to paragraph 10 who has also worked for Respondent Comtrans at any time since January 2009, including each such person's job classification, wages rates, and

---

[3] The bargaining unit alleged includes: "All full-time field paramedics, EMTs, IEMT's, and registered nurses, but excluding administrative staff individuals, support services, personnel not directly operating in the field as an EMS provider, guards, office clerical, and supervisors as defined under the Act." Exhibit D at ¶ 5(a).

dates of hire and end of employment with Respondent Comtrans." This request seeks information on employees outside of the bargaining unit. (Exhibit B at ¶ 24). In fact, this request seeks information on management-level employees, which are not even covered by the National Labor Relations Act and whose information is not the proper subject of the NLRB's subpoena. *Walla Walla Union Bulletin, Inc. v. NLRB,* 631 F.2d 609, 612 (9th Cir. 1980) (holding that "managerial employees have been judicially excluded from the [National Labor Relations] Act's coverage."). Additionally, because PMT and ComTrans are not alter egos, no facts exist to support the NLRB's claims and PMT has no such documents.

Request 19 seeks "[d]ocuments as will show the name of the principal bookkeepers and/or accountants used by Respondent PMT." This information is not relevant to the allegations in the underlying Complaint because it is in not way related to the allegations or issues in the Complaint. (Exhibit B at ¶ 25).

Request 24 seeks "[a]ll licenses, permits, certificates of need or other documents constituting an authorization to operate any business held by or issued to Respondent PMT, and/or Respondent Comtrans, and/or Bob Ramsey and/or Pat Cantelme, and all applications and other documents filed by Respondent PMT, and/or Respondent Comtrans, and/or Bob Ramsey and/or Pat Cantelme with respect to such licenses, permits, certificates or other authorizations to operate." This request seeks information on businesses that are not even included in the underlying Complaint. (Exhibit B at ¶ 26). This information is not relevant to the allegations in the Complaint. Accordingly, these requests should not be enforced.

> **ii.** *Request #8, 14, and 38 seek information that is unduly burdensome and irrelevant*

Request 38 seeks "[d]ocuments, including, but not limited to, personnel and similar files and their contents, as will show any employee who was discharged by Respondent PMT and the underlying reason for the discharge, during the period of July 2008 through the present." This request is unduly burdensome. (Exhibit B at ¶ 28). As

outlined above, a subpoena should not be enforced where it is unreasonable because it is unduly burdensome <u>or</u> overly broad. *North Bay,* 102 F.3d at 1008 (emphasis added).

Gathering and reviewing the documents requested by the SDT would be an enormous undertaking and create serious difficulties for PMT. (Exhibit B at ¶ 28). Forced compliance with an administrative subpoena also should be denied when the subpoena creates an undue administrative and financial burden on an employer. In order to show that a subpoena is unduly burdensome, the subpoenaed party must show that the subpoena seriously disrupts regular business operations. *See EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 477 (4th Cir.), cert. denied 479 U.S. 815 (1986); *NLRB v. Carolina Food Processors,* 81 F.3d at 513. In making the determination of whether a subpoena is unduly burdensome, courts must "weigh the likely relevance of the requested material to the investigation against the burden to [the respondent] producing the material." *Ford Motor Credit,* 26 F.3d at 47; *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981); *EEOC v. South Carolina National Bank*, 562 F.2d 329, 332 (4th Cir. 1977).

The information requested by Request #38 would require individualized review of hundreds of personnel files to determine who was terminated and for what reason. (Exhibit B at ¶ 28). This would cause days of disruption to the normal business duties of PMT's human resources personnel. *Id.*

Additionally, Section 10(b) of the National Labor Relations Act provides that "no complaint shall be based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C. § 160(b). Here, the underlying Complaint was filed in April 2010. This request seeks information dating back to July 2008, well prior to the six month statute of limitation. Accordingly, the information is not relevant to the allegations in the Complaint and this request should not be enforced.

Additionally, responding to Request 8 and 14 would require manual review and

legal review of each and every one of PMT's invoices since January 2009 in order to protect and redact confidential patient information. PMT has performed tens of thousands of transports in that time period. (Exhibit B at ¶ 27). It would require hundreds of hours of time and enormous expense to gather and review the documents that have personal and confidential patient health information. (Exhibit B at ¶ 27). Accordingly, the request is unduly burdensome.

### iii. *Requests #6, 7, 8, 12 and 27 seek confidential information*

Requests 6, 7, 8, 12, and 27 seek confidential and proprietary information.[4] (Exhibit B at ¶ 29). Request 27 seeks disclosure of confidential business and customer information. (Exhibit B at ¶¶29-37). Courts have recognized that customer lists, and information regarding a company's relationship with its customers, developed through significant effort and expense by the company, are "trade secrets" within the protection of the Uniform Trade Secrets Act, which Act is contained in A.R.S. § 44-401, *et seq*. *See, e.g. MAI Systems Corp. v. Peak Computer, Inc*., 991 F.2d 511, 521 (9th Cir. 1993) (holding that company's customer database qualifies as a trade secret; *Stampede Tool*

---

[4] The document requests are as follows:

6. Documents showing the equipment, land, building, and assets owned, leased, or otherwise used by Respondent PMT, along with the location and ownership or leasehold interest in such, including vehicle registrations for all vehicles, and lease, sublease, rental, or purchase agreements.

7. Copies of all contracts, leases or other agreements, including employment agreements, subcontracts, purchase and sales agreements, notes, loans, and security agreements, between Respondent PMT and Respondent Comtrans; between Respondent PMT and Bob Ramsey: and between Respondent Comtrans and Bob Ramsey.

8. Documents, including facility lists, accounting ledgers, or accounting summaries, showing work performed by Respondent PMT, for whom the work was performed, and the type of work performed, since January 2009.

12. Documents showing any financial transaction between Respondent PMT and Respondent Comtrans since January 2009, including any transfer of funds, assets, capital, equipment, or employees, and the purpose of such transfer; the purchase, rental, lending, or lease of equipment, land, or assets, including, but not limited to, any agreements for Respondent Comtrans to use Respondent PMT's vehicle bays, mechanic shop, parking spots, or office space; or loans between the two companies.

27. Documents showing which customers, clients, or companies to which Respondent PMT provided general transport services and 911/Operations since January 2009.

*Warehouse, Inc. v. May*, 651 N.E.2d 209, 215 (Ill. App. 1995); *Courtesy Temporary Service, Inc. v. Camacho*, 272 Cal.Rptr. 352, 357 (Cal. App. 1990). Additionally, the NLRB misconstrues the nature of the ambulance business. Ambulance companies transport patients and do not necessarily deal with customers, clients, or companies in the traditional sense. Accordingly, the information sought by Request 27 does not exist in the form requested. Further, documentation showing *patients* who have been transported would certainly contain private and confidential healthcare information.

Requests 6, 7, 8, and 12 seeks information on the detailed financial status of PMT. (Exhibit B at ¶ 32). This information is also confidential and proprietary. (Exhibit B at ¶¶ 32-37). *See e.g., Enterprise Leasing Co. of Phoenix v. Ehmke,* 197 Ariz. 144, 149-50, 3 P.3d 1064, 1069-70 (Ct. App.1999) (finding that company's financial documents were trade secrets); *Revere Transducers, Inc. v. Deere & Co.,* 595 N.W.2d 751, 776 (Iowa 1999) (holding that trade secrets can range from customer information, to company's financial information, to information about manufacturing processes, to the composition of products). If PMT is required to disclose intimate details about its business operations, that data will become available to PMT's competitors. This intrusion into PMT's confidential business information should not be enforced.

### iv. *Requests # 25 and 26 are unintelligible*

Requests #25 and 26 seek information relating to "routes" in certain areas and the discontinuance of such "routes." Because ambulances do not operate on a route system, PMT is unsure how to respond to this request. (Exhibit B at ¶ 40). Ambulances respond to emergencies, and do not follow a set route as would a delivery truck, etc. (Exhibit B at ¶ 40). Enforcement of an administrative subpoena may be declined if the administrative subpoena is vague. *Bowles v. Abendroth*, 151 F.2d 407, 408 (9th Cir. 1945).

### C. The Documents Requested by the SDT Contain Confidential and Trade Secret Information and a Protective Order is necessary.

Even when enforcement of a NLRB subpoena is appropriate, district courts may

address the confidentiality concerns of subpoenaed parties via the use of protective orders. *Cable Car Advertisers,* 319 F.Supp.2d at 999; *NLRB v. SEIU, Local 521,* 2008 WL 152176 at *3 (N.D. Cal. Jan. 16, 2008).

As outlined above, much of the information sought by the SDT would be damaging in the hands of PMT's competitors. This is a proper reason for a protective order. *Diamond Ventures, LLC v. Barreto,* 452 F.3d 892 (D.C. Cir. 2006) (reversing district court order as an abuse of discretion, when district court did not prohibit party from viewing its competitor's information); *Bestechnologies, Inc. v. Trident Environmental Sys., Inc.,* 681 So.2d 1175 (Fla. Ct. App. 1996) (restricting access to attorneys only in trade secret dispute); *American Tobacco Co. v. Evans,* 508 So.2d 1057 (Miss. 1987) (affirming attorneys and experts only provision in protective order).

Much of the information sought by the NLRB would be damaging in the hand of PMT's competitors and their employees, agents, or representatives. (Exhibit B at ¶ 38). In fact, one of PMT's primary competitors, Southwest Ambulance, had an employee representative in attendance at the underlying hearing. (Exhibit B at ¶ 37). Ambulance service in Maricopa county is an extremely competitive business with profit margins of 5% or less. (*Id.* at ¶ 38). If specific customer lists became public information, PMT's competitors would be able to target their marketing efforts to the customers and that would cause significant damage to PMT. *Id.* The information sought by the NLRB includes contracts, marketing information, salaries, scheduling information, and additional information that would be damaging in the hands of PMT's competitors.

For this reason, simultaneously with this Opposition, Respondents have filed a Motion for Protective Order. Accordingly, in the event that the NLRB's Application is granted, in whole or in part, Respondents request that this Court enter a protective order as sought in PMT's Motion for Protective Order filed simultaneously herewith.

  **D.**  **The Subpoena to Testify was not served correctly and should not be enforced.**

Although the NLRB attempts to paint Mr. Ramsey in a negative light, it must be

PHOENIX \ 782354.2 \ 087465.002         12

noted that the underlying trial was scheduled to break on June 11 and reconvene in August. Mr. Ramsey was unavailable for the week of June 7, but was willing to testify in August, a fact which was relayed to the NLRB and the Administrative Law Judge. (Exhibit F, Transcript of NLRB hearing, dated June 7, 2010 at 8, relevant excerpts attached). Mr. Ramsey, a national leader in emergency medical services is the President and Chairman of numerous companies. He travels extensively and is often out of the state of Arizona on business, as he was the week of June 7. Additionally, because of his position at the various companies, he is not heavily involved in the day-to-day operations of PMT or ComTrans and his testimony is not likely to be illustrative on the issues in the Complaint. This fact was also relayed to the NLRB once counsel was made aware that Mr. Ramsey had been subpoenaed. (Exhibit G, E-mail correspondence, dated June 6, 2010). Regardless, Mr. Ramsey is and always has been willing to testify at the hearing when it reconvenes in August, assuming proper notice and appropriate service. Accordingly, the Application as to Mr. Ramsey is a non-issue.

As outlined above, under Ninth Circuit law, a district court's scope of inquiry in an agency subpoena enforcement proceeding is limited to: 1) whether Congress has granted the authority to investigate; 2) whether procedural requirements have been followed; and 3) whether the evidence sought is relevant and material to the investigation. *NLRB v. North Bay Plumbing, Inc.,* 102 F.3d 1005, 1007 (9th Cir. 1996) (citing *EEOC v. Children's Hosp. Med. Ctr. of Northern Cal.,* 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc)).

The NLRB did not follow its own procedural requirements for valid service of process on Mr. Ramsey. The original subpoena to testify was served via certified mail to PMT's operational headquarters at 2495 S. Industrial Park Avenue in Tempe, Arizona. Mr. Ramsey's office is not even at this location. Rather, Mr. Ramsey's office is located at 1501 West Fountainhead Pkwy in Tempe, Arizona. Regardless, the receipt was not signed by Mr. Ramsey. (*See* Exhibit E to NLRB's Memorandum of Points and

Authorities). Rather, it was signed by Amy Starkel, a PMT employee at a location other than Mr. Ramsey's office. Even worse, the follow-up letter sent to Mr. Ramsey on May 10, 2010 was definitely procedurally deficient. The NLRB cannot cite any authority stating that a follow-up letter is sufficient to constitute a proper subpoena to appear. *See also* 29 U.S.C. § 161(4) ("Complaints, orders, and other process and papers of the Board ... may be served either personally or by registered or certified mail ....").

The NLRB Case handling Manual contains detailed procedures to be followed regarding service of subpoenas. These procedures were not followed in this case.

Critically, counsel for PMT were not served or provided courtesy copies of either the subpoena to testify or the follow-up letter to Ramsey. Specifically, neither Robert Deeny, Thomas Kennedy, or Michael Grubbs was served with a copy of the subpoena issued to Mr. Ramsey. According to paragraph 11778, "Service of Subpoenas" of the NLRB's own ULP Case Handling Manual, the following language appears: ". . . as a matter of courtesy, an effort should be made to serve all attorneys and all representatives of a party or a witness." *See* NLRB Case Handling Manual, Part I, Unfair Labor Practice Proceedings, ¶ 11778 (relevant excerpts attached hereto as Exhibit E). Section 11770.3 of the Case handling manual provides "[w]hen serving a subpoena on a witness represented by an attorney, restrictions against skipping counsel mandate that the attorney receive notification of the subpoena." *Id.* at 11770.3; *See also Id.* at 11842.3 (providing that when a party's or person's representative is an attorney, Model Rule or Prof'l Conduct R. 4.2, "the skip counsel rule described in Sec. 10058, regulates the service of all documents and correspondence."). Both of the above-mentioned counsel for Respondent PMT only received informal notice from the NLRB during a conversation with the NLRB's trial counsel on the Thursday afternoon prior to the hearing the following Monday.

Federal administrative law requires that a federal agency comply with its own internal guidelines. *See, U.S. v. Lee,* 274 F.3d 485, 492 (8th Cir. 2001), citing *Accardi v.*

*Shawnessey,* 347 U.S 260 (1954). In *Lee, supra,* the court declared: "We recognized that the *Accardi* doctrine bars administrative agencies from taking action 'inconsistent with their internal regulations when it would affect individual rights,'" other than cases relating to the internal regulations of the Department of Justice.

In *National Association of Homebuilders v.* Norton*,* 340 F.3d 835 (9th Cir. 2003), the Ninth Circuit highlights that where an agency chooses to promulgate a policy it must follow that policy, observing that federal agencies must follow their own rules, citing *Steenholdt v. FAA,* 314 F.3d 633, 639 (D.C.Cir. 2003) ("The *Accardi* doctrine requires federal agencies to follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions. 'Courts, of course, have long required agencies to abide by internal, procedural regulations . . . even when those regulations provide more protection than the Constitution or relevant civil service laws.'" (internal citations omitted). Because the NLRB did not follow its own procedures for service of the subpoena to testify, the subpoena cannot be enforced.

The NLRB makes much of the fact that no petition to revoke was filed regarding Mr. Ramsey's subpoena. However, there are two primary reasons for this. First, as counsel was not copied on the subpoena or the follow-up letter, counsel was not aware of the subpoena until after the time for petitioning had passed. Further, Mr. Ramsey had no reason to move to revoke the initial subpoena, as he was available to testify at the originally set hearing date. It was only when the hearing was postponed to June 7 that Mr. Ramsey became unavailable.

Accordingly, for the foregoing reasons, the subpoena to testify to Mr. Ramsey should not be enforced by this court.

### III.   CONCLUSION

For the foregoing reasons, the Petition should be dismissed, with prejudice.

DATED: July 15, 2010

              SHERMAN & HOWARD L.L.C.

            By <u>/s/ Michael C. Grubbs</u>
              Arthur W. Pederson
              Thomas J. Kennedy
              Michael C. Grubbs
              2800 North Central Avenue, Suite 1100
              Phoenix, Arizona 85004-1043
              Attorneys for Professional Medical Transport, Inc., and Bob Ramsey

I hereby certify that on July 15, 2010, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

COPY of the foregoing hand-delivered on July 15, 2010, to:

David A. Kelly, Deputy Regional Attorney
Sandra L. Lyons, Field Attorney
Mary G. Davidson, Field Attorney
National Labor Relations Board,  Region 28
2600 North Central Avenue, Suite 1800
Phoenix, Arizona 85004


By: <u>/s/ Tisha A. Davis</u>