# Exhibit A



LEXSEE 327 FED. APPX. 11

**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Petitioner - Appellee, v. AMERICAN APPAREL, INC., Respondent - Appellant.**

**No. 08-55262**

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

*327 Fed. Appx. 11; 2009 U.S. App. LEXIS 8510*

**April 17, 2009 ** , Submitted, Pasadena, California**

**   The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**April 22, 2009, Filed**

**NOTICE:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]
Appeal from the United States District Court for the Central District of California. D.C. No. CV-07-06778-ODW. Otis D. Wright, District Judge, Presiding.

**DISPOSITION:** REVERSED AND REMANDED.

**COUNSEL:** For U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Petitioner - Appellee: Donna J. Brusoski, Attorney, EQUAL EMPLOYMENT OPPORTUNITY COMMISION, Washington, DC; Anna Y. Park, Esquire, Attorney, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Los Angeles, CA.

For AMERICAN APPAREL, INC., Respondent - Appellant: Taylor Stephen Ball, Attorney, Adam Levin, MITCHELL SILBERBERG & KNUPP, LLP, Los Angeles, CA; Joyce E. Crucillo, Esquire, Attorney, c/o American Apparel, Inc., Los Angeles, CA.

**JUDGES:** Before: SILVERMAN and CALLAHAN, Circuit Judges, and QUIST, *** District Judge.

*** The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

**OPINION**

[*12] MEMORANDUM *

* This disposition is not appropriate for publication and is not precedent except as provided by *9th Cir. R. 36-3.*

Before: SILVERMAN and CALLAHAN, Circuit Judges, and QUIST,*** District Judge.

Respondent, American Apparel, Inc. ("American"), appeals the district court's order directing it to comply with an administrative subpoena from [**2] Petitioner, the Equal Employment Opportunity Commission ("EEOC"), in connection with a sexual harassment Charge of Discrimination filed by a former American employee.

We review the district court's decision regarding enforcement of an administrative subpoena de novo. *F.D.I.C. v. Garner, 126 F.3d 1138, 1142 (9th Cir. 1997).* For the following reasons, we reverse.

First, although the EEOC is granted broad investigatory powers under Title VII, *see 42 U.S.C. § 2000e-8(a); E.E.O.C. v. Shell Oil Co., 466 U.S. 54, 68, 104 S. Ct. 1621, 80 L. Ed. 2d 41 (1984)* (recognizing that the relevance limitation on the EEOC's authority to investigate

327 Fed. Appx. 11, *; 2009 U.S. App. LEXIS 8510, **

"is not especially constraining"), those powers are subject to recognized privileges and protections. *See Dole v. Milonas, 889 F.2d 885, 888-890 (9th Cir. 1989)* (recognizing attorney-client privilege as a limitation on administrative subpoena issued by the Secretary [*13] of Labor). American made a preliminary showing that the notes and memoranda prepared by its outside counsel may be protected work product and/or subject to the attorney-client privilege.

Second, although a party may waive both the attorney-client privilege or work product protection by injecting an issue into the case, *see Bittaker v. Woodford, 331 F.3d 715, 718-20 (9th Cir. 2003)*, [**3] the record does not show that American had done so in this case. Although American asks us to decide whether the EEOC is entitled to the disputed documents, the parties raise issues that the district court should consider in the first instance, including how to evaluate American's assertion of privilege and work product protection, and whether and to what extent, they are waived. *See Dole, 889 F.2d at 890.* [1]

1   In light of this disposition, we decline to take judicial notice of the documents submitted by American.

**REVERSED AND REMANDED.**

# Exhibit B



LEXSEE 2001 U.S. DIST. LEXIS 14090



Analysis
As of: Aug 09, 2010

### NATIONAL LABOR RELATIONS BOARD, on relation of INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO, Applicant, v. G. RABINE & SONS, INC., d/b/a RABINE PAVING, and CONGRESS OF INDEPENDENT UNIONS, Respondents.

### 00 C 5965

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### *2001 U.S. Dist. LEXIS 14090; 144 Lab. Cas. (CCH) P11,154*

### September 6, 2001, Decided
### September 10, 2001, Docketed

**PRIOR HISTORY:** [*1] Adopting in Part and Modifying in Part Magistrate's Document of May 7, 2001, Reported at: *2001 U.S. Dist. LEXIS 15511.*

**DISPOSITION:** Magistrate Judge Nolan's Report and Recommendation with minor modifications adopted. Local 150's Motion for an Order Setting a Hearing on Rule to Show Cause granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Respondent paving company objected to the ruling of a Magistrate which issued a report and recommendation that a hearing be set and that the company comply with a subpoena duces tecum issued by the applicant union where the company had asserted unfair labor practices. The union also sought a finding that the company was in contempt.

**OVERVIEW:** The matter arose out of an unfair labor practice filed by the company against the union alleging it had violated § 8(b)(7)(A) of the National Labor Relations Act, *29 U.S.C.S. § 158(b)(7)(A),* when it allegedly picketed the company's premises with a recognitional object when no question concerning representation could

be raised. The existence and status of the alleged contract between the company and the Congress of Independent Unions (CIU) was a matter under investigation in the unfair labor practice proceeding. The court held the information sought through the administrative subpoena at issue in the matter was reasonably relevant to the unfair labor practice charge because the information sought was related to the existence and status of the alleged contract between the company and CIU. The information sought in the subpoena in question was reasonably related to the matters in question and under investigation. Questions as to the legal sufficiency of the defenses raised by the union were not relevant to the court's decision to enforce the administrative subpoena in question.

**OUTCOME:** The court adopted the magistrate's report and recommendation with minor modifications. The union's motion for an order setting a hearing was granted in part and denied in part. The motion to enforce the subpoena duces tecum was granted. The motion for a finding of contempt was denied.

**CORE TERMS:** paving, administrative subpoenas, subpoena, labor practice, unfair, subpoena duces tecum, affirmative defenses, enforcement proceedings, standard of review, subpoena issued, collective bargaining agree-

ment, investigative, enforcing, scope of review, adjudicative, de novo, reasonably relevant, adjudicative hearing, indefinite, enforcement actions, contempt, decision to issue, legal sufficiency, underlying proceedings, inappropriate, recommended, correctly, relevance, picketed, modifications

**LexisNexis(R) Headnotes**

*Administrative Law > Judicial Review > Standards of Review > De Novo Review*
*Civil Procedure > Judicial Officers > Magistrates > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN1] If a magistrate judge's report and recommendation would be dispositive of the entire matter before the court, the court will review the ruling de novo. *Fed. R. Civ. P. 72(b)*; *28 U.S.C.S. § 636(b)(1)*. The district court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the Magistrate Judge with instructions.

*Administrative Law > Agency Investigations > Scope > Subpoenas*
*Administrative Law > Judicial Review > Standards of Review > De Novo Review*
*Environmental Law > Litigation & Administrative Proceedings > Judicial Review*
[HN2] Under § 11(2) of the National Labor Relations Act, *29 U.S.C.S. § 161(2)*, a district court has jurisdiction to enforce a subpoena issued in a hearing or investigation by the National Labor Relations Board. In an administrative subpoena enforcement proceeding, the role of the district court is sharply limited, and the proceeding is of a summary nature. When deciding whether to enforce an administrative subpoena, it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. In addition, a district court may refuse to enforce an administrative subpoena where the disclosure sought would impose an unreasonable or undue burden on the party from whom production is sought. As to these narrowly prescribed issues, a district court reviews an agency's decision to issue a subpoena de novo.

*Administrative Law > Agency Investigations > Scope > Subpoenas*
*Civil Procedure > Pretrial Matters > Subpoenas*
[HN3] The questions presented to a district court on an application to enforce an administrative subpoena are narrowly limited and the proceedings are of a summary nature.

*Administrative Law > Agency Investigations > Scope > Subpoenas*
*Civil Procedure > Pretrial Matters > Subpoenas*
[HN4] The issues before a court on an administrative subpoena enforcement proceeding are the same whether the subpoena is adjudicative or investigative.

*Administrative Law > Agency Investigations > Scope > Subpoenas*
*Civil Procedure > Pretrial Matters > Subpoenas*
[HN5] It is not inappropriate for a district court to take into account whether an administrative subpoena was issued pursuant to an investigative or adjudicative hearing for the purpose of determining whether the information sought was reasonably relevant.

*Administrative Law > Agency Investigations > Scope > Subpoenas*
*Civil Procedure > Pretrial Matters > Subpoenas*
[HN6] Generally, a court will refuse to enforce an administrative subpoena where compliance would threaten the normal operation of a respondent's business.

*Administrative Law > Agency Investigations > Scope > Subpoenas*
*Civil Procedure > Pretrial Matters > Subpoenas*
[HN7] The merits of claims or defenses in the underlying proceeding are not at issue when a district court is determining whether to enforce an administrative subpoena.

*Administrative Law > Agency Investigations > Scope > Subpoenas*
*Civil Procedure > Pretrial Matters > Subpoenas*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > General Overview*
[HN8] For adjudicative subpoenas, the reasonable relevance of the information sought is measured against the charges specified in the complaint.

**COUNSEL:** For NATIONAL LABOR RELATIONS BOARD: Melinda S. Burleson, Baum, Sigman, Auerbach, Pierson, Neuman & Katsaros, Ltd., Chicago, IL.

Case 2:10-mc-00061-DGC   Document 25-1   Filed 08/09/10   Page 7 of 34

Page 3

2001 U.S. Dist. LEXIS 14090, *; 144 Lab. Cas. (CCH) P11,154

For NATIONAL LABOR RELATIONS BOARD: Harvey A. Roth, National Labor Relations Board, Chicago, IL.

For G. RABINE AND SONS, INC., respondent: Frederick Lewis Schwartz, Adam Carl Wit, Littler Mendelson, P.C., Chicago, IL.

For CONGRESS OF INDEPENDENT UNIONS, respondent: Robert G Raleigh, Brinker & Doyen LLP, Clayton, MO.

**JUDGES:** HON. RONALD A GUZMAN, United States Judge.

**OPINION BY:** RONALD A GUZMAN

**OPINION**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Respondent G. Rabine & Sons, Inc.'s ("Rabine Paving") objections to the Report and Recommendation of Magistrate Judge Nan Nolan's ruling of May 7, 2001, granting in part and denying in part Applicant International Union of Operating Engineers, Local 150, AFL-CIO's ("Local 150") Motion for an Order Setting a Hearing on a Rule to Show Cause. This case arises out of an unfair labor practice charge [*2] filed by Rabine Paving against Local 150. The National Labor Relations Board ("NLRB" or "Board") on relation of Local 150 has applied to this Court, pursuant to *29 U.S.C. § 161(2)* of the National Labor Relations Act, as amended ("NLRA" or "the Act"), to enforce a *subpoena duces tecum* ("subpoena") served on Rabine Paving and Respondent Congress of Independent Unions ("CIU") during the proceedings below. This Court has jurisdiction over the matter pursuant to *29 U.S.C. § 161(2)*.

**PROCEDURAL AND FACTUAL BACKGROUND**

Rabine Paving is engaged in the business of commercial and residential asphalt paving. (*Rabine Paving's Response in Opposition to the Application ("Response")* at 2.) In April of 1997, Rabine Paving and the CIU entered into a collective bargaining agreement, commencing on May 1, 1997 and ending on April 30, 1998. (*Id.* at 2, 3.) Rabine Paving and CIU have subsequently entered into successive collective bargaining agreements. (*Id.* at 3.) The most recent collective bargaining agreement had a term of May 1, 2000 through April 30, 2003. (*Id.*) It is not clear on what date the parties entered into this [*3] most recent collective bargaining agreement. (*Local 150's Reply in Support of its Application ("Reply")* at 6.)

On or about May 15, 2000, an affiliate of Local 150 and a Rabine Paving employee picketed Rabine Paving's premises with signs critical of CIU and Rabine Paving. (*Response* at 3.) On May 15, 2000, Rabine Paving filed an unfair labor practice charge against Local 150. (*Applicant's Motion for an Order Setting a Hearing on a Rule to Show Cause ("Motion")* at 1.) The charge alleged that Local 150 had picketed Rabine Paving for a recognitional purpose in violation of Section 8(b)(7)(A) of the NLRA, *29 U.S.C. § 158(b)(7)(A)*. On June 2, 2000, Region 13 of the NLRB issued a Complaint and Notice of Hearing. (*Response* at 1.) The parties disagree as to the characterization of the affirmative defenses asserted by Local 150 in the proceedings below. Local 150 claims that, first, as of May 15, 2000, the day of the alleged picketing, Rabine Paving and CIU did not have a valid collective bargaining agreement in place that would preclude Local 150 from seeking recognition. (*Reply* at 13.) Alternatively, Local 150 claims that, even if there were [*4] a contract in place on that date, that contract was not entered into pursuant to Section 9(a) of the NLRA, *29 U.S.C. § 159*. (*Id.*) Rabine Paving, on the other hand, characterizes Local 150's first defense as asserting that Rabine Paving never validly recognized CIU because CIU did not have majority status in April of 1997. (*Reply* at 4.) Rabine Paving characterizes Local 150's second affirmative defense as asserting that the collective bargaining agreements entered into between Rabine Paving and CIU were not subject to Section 9(a) of the NLRB. (*Id.*) As will be explained below, the substantive basis for Local 150's affirmative defenses is not at issue in the current matter.

An unfair labor practice hearing was subsequently held before Administrative Law Judge Nancy Sherman ("ALJ" or "ALJ Sherman") on August 21 and 23, 2000. (*Id.*) On July 31, 2000, Local 150 requested and was issues subpoenas duces tecum pursuant to Section 11(4) of the NLRA and Section 102.111 of the Board's Rule and Regulations. Local 150 served a *subpoena duces tecum* upon Rabine Paving on July 31, 2000, and served another subpoena duces tecum on CIU on August 14, 2000. On [*5] August 3 and 15, 2000, respectively, Rabine Paving and CIU filed Petitions to Revoke Local 150's *Subpoena Duces Tecum*. Rabine Paving filed a Petition to Revoke the subpoena, arguing that the defenses that Local 150 had raised were barred. (*Id.* at 5.) On August 17, 2000, the ALJ granted in part and denied in part Rabine Paving's Petition to Revoke. (*Id.*) The ALJ ordered Rabine Paving to produce copies of all photographs, videotapes, and/or audio tapes relied upon in making its charge against Local 150. The ALJ ordered Rabine Paving to produce for the period of May 1999 through May 2000, copies of all authorization and dues deduction cards for the CIU signed by Rabine Paving employees, as well as all notes or other document relat-

Case 2:10-mc-00061-DGC   Document 25-1   Filed 08/09/10   Page 8 of 34

Page 4
2001 U.S. Dist. LEXIS 14090, *; 144 Lab. Cas. (CCH) P11,154

ing to the negotiations of the May 2000 contract. For the rest of the documents she order produced, the ALJ limited her order to documents "which were in effect between the two months before and two months after the execution of the May 2000 contract." (*Id.*) For this four-month period, she ordered Rabine Paving to produce a list of all employees on temporary layoff, disability, illness or workers' compensation, or otherwise entitled to or eligible [*6] for recall to Rabine; a list of all employees severed from employment with Rabine Paving for any reason; copies of all personnel files for all of these individuals; payroll ledgers, time cards, federal tax forms W-2, 1099 and unemployment tax forms for all Rabine Paving employees; all documents describing equipment operated, services or repaired, or any other work performed, and personnel assigned to each job assignment; all documents describing any employee benefit program offered to Rabine Paving employees, and the eligibility requirements; a list of employees who have enrolled or participated in each benefit program; copies of all employee handbooks utilized by Rabine Paving.

On August 18, 2000, the ALJ granted in part and denied in part CIU's Petition to Revoke the Subpoena Duces Tecum. ALJ Sherman ordered CIU to produce copies of all collective bargaining agreements between Rabine Paving and CIU for the period 1997 to the present; copies of the CIU constitution and by-laws, including proposed and/or ratified amendments effective in the year 2000; for the period of two months prior, and two months after the execution of the alleged May 2000 contract, all records relating to Rabine [*7] Paving employees' membership in the CIU; and for the period of two months prior, and two months after the execution of the alleged May 2000 contract, all documents relating or referring to CIU's denial of membership to any Rabine Paving employee.

The hearing on the unfair labor practice charge was conducted on August 21 and 23, 2000. Both Rabine Paving and CIU informed the ALJ that they would refuse to comply with the ALJ's order and await subpoena enforcement proceedings by Local 150. On September 28, 2000, NLRB Region 13 filed the instant Application for Order Requiring Obedience to Subpoenas Duces Tecum on relation of Local 150. This matter was referred to Magistrate Judge Nan Nolan on October 18, 2000.

In her Report and Recommendation, the Magistrate Judge recommended that the Court order CIU and Rabine Paving to comply with ALJ Sherman's August 17 and August 18, 2000 orders enforcing portions of Local 150's *subpoena duces tecum* and deny Local 150's request for a hearing on a rule to show cause or a finding of contempt. [1] Rabine Paving timely filed objections to the Magistrate Judge's Report and Recommendation on

May 17, 2001. CIU has not objected to the Magistrate Judge's [*8] Report and Recommendation.

> 1   The Magistrate Judge also recommended that the portion of Local 150's Motion requesting a hearing on a rule to show cause for a finding of contempt be denied. Rabine Paving does not object to the portion of the Magistrate Judge's Report and Recommendation and this portion of her Recommendation is not at issue here.

## STANDARD OF REVIEW

This matter is before the Court on Rabine Paving's Objections to the Report and Recommendation filed by Magistrate Judge Nolan. [HN1] Because Judge Nolan's Report and Recommendation would be dispositive of the entire matter before the Court (that is, whether to enforce the administrative subpoenas), this Court will review the May 7 ruling *de novo*. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). The district court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the Magistrate Judge with instructions. *Id.*

## DISCUSSION

[HN2] Under Section 11(2) of the NLRA, [*9] *29 U.S.C. § 161(2)*, a district court has jurisdiction to enforce a subpoena issued in a hearing or investigation by the Board. In an administrative subpoena enforcement proceeding, the role of the district court is "sharply limited," *EEOC v. Tempel Steel Co., 814 F.2d 482, 485 (7th Cir. 1987)*, and the proceeding is of a "summary nature." *EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 308-09 (7th Cir. 1981); NLRB v. N. Am. Van Lines, Inc., 611 F. Supp. 760, 763 (N.D. Ill. 1985)*. When "deciding whether to enforce [an administrative subpoena], 'it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" *Dow Chem. Co. v. Allen, 672 F.2d 1262, 1267 (7th Cir. 1982)* (quoting *United States v. Morton Salt Co., 338 U.S. 632, 652, 94 L. Ed. 401, 70 S. Ct. 357 (1950))*. In addition, a district court may refuse to enforce an administrative subpoena where the disclosure sought "would impose an unreasonable or undue burden on the party from whom production is sought." *Dow Chem. Co., 672 F.2d at 1267.* [*10]  As to these narrowly prescribed issues, a district court reviews an agency's decision to issue a subpoena *de novo. Id.* "The ALJ's decision to issue the subpoenas and his denial of the motion to quash are not binding on the court as to the questions properly presented." *Id.*

Rabine Paving objects to the Magistrate Judge's Report and Recommendation enforcing the administrative subpoena arguing that the Magistrate Judge erred by (1)

Case 2:10-mc-00061-DGC   Document 25-1   Filed 08/09/10   Page 9 of 34

Page 5

2001 U.S. Dist. LEXIS 14090, *; 144 Lab. Cas. (CCH) P11,154

failing to review the ALJ's decision *de novo*; (2) finding that some of the issues raised were beyond the scope of review; and (3) misapplying the scope of review. (*Respondent Rabine Paving's Objections to the Report and Recommendation of the Magistrate Judge* ("Objections") at 2-8.) For the following reasons, Local 150's Motion requesting that this Court enter an order directing Rabine Paving and CIU to comply with the ALJ's orders enforcing portions of Local 150's *subpoena duces tecum* is granted and the Magistrate Judge's Report and Recommendation is adopted in part with modifications.

First, rejecting the appropriate standard of review, Rabine Paving argues that the Magistrate Judge erred by failing to review *de novo* all of the [*11] legal standards applied and legal conclusions rendered by the ALJ in the matter. [2] (*Objections* at 2.) In support of this proposition, Rabine Paving cites *NLRB v. CWI of Maryland, Inc., 127 F.3d 319 (4th Cir. 1997)*. However, *CWI of Maryland, Inc.* is inapposite because the court in that case was not determining whether to enforce an administrative subpoena. *Id. at 322*. Instead, that court was determining whether to enforce a Board order affirming the decision of an ALJ who had found that the defendant in that case had committed numerous unfair labor practices. *Id.* While the standard of review that Rabine Paving argues should be used in the current matter may be the correct standard of review for determining whether to enforce a Board order affirming the decision of an ALJ in an unfair labor practice charge, it is clearly not the correct standard of review for determining whether to enforce an administrative subpoena. Rabine Paving has not cited to, and research does not reveal, a single case in which this standard of review was used by a court to determine whether to enforce an administrative subpoena. As noted above, [HN3] the questions presented [*12] to a district court on an application to enforce an administrative subpoena are narrowly limited and the proceedings are of a summary nature. *See, e.g., EEOC v. Tempel Steel Co., 814 F.2d 482, 485 (7th Cir. 1987)* Rabine Paving's suggested standard of review is inappropriate for administrative subpoena enforcement proceedings.

> 2  The Magistrate Judge correctly identified the issues before a court on an application to enforce an administrative subpoena and correctly determined that the scope of review is extremely narrow. However, the Magistrate Judge failed to acknowledge that, *as to those narrow issues*, a district court is not bound by the ALJ's decision. To the extent that the Magistrate Judge's Report and Recommendation fails to recognize that a district court reviews *de novo* the narrow questions before it in administrative subpoena enforcement proceedings, the Report is rejected. The Magistrate Judge's failure to acknowledge that a district

court is not bound by the ALJ's decision to issue an administrative subpoena was harmless, however, because Magistrate Judge Nolan otherwise properly decided to enforce the subpoena in question.

[*13] Second, relying on *Dow Chemical Co. v. Allen, 672 F.2d 1262 (7th Cir. 1982)*, Rabine Paving attempts to argue that the narrow scope of review applied in administrative subpoena enforcement proceedings is only proper when a court is deciding whether to enforce an administrative subpoena issued by an agency during an *investigation*. (*Objections* at 3.) Rabine Paving contends that when a district court is deciding whether to enforce an administrative subpoena issued by an ALJ during an *adjudicative* hearing, a broad *de novo* standard of review applies. (*Objections* at 4.) Rabine Paving's reliance on *Dow Chemical Co.* is entirely misplaced because the court in *Dow Chemical Co.* expressly held that [HN4] the issues before a court on an administrative subpoena enforcement proceeding are the same whether the subpoena is adjudicative or investigative. *Id. at 1267-68*. In *Dow Chemical Co.* the Seventh Circuit did not create one standard of review for administrative subpoenas issued in investigative hearings and another for administrative subpoenas issued in adjudicative hearings. Rather, the Seventh Circuit simply acknowledged that [HN5] it was not [*14] inappropriate for a district court to take into account whether an administrative subpoena was issued pursuant to an investigative or adjudicative hearing for the purpose of determining whether the information sought was reasonably relevant. *Id. at 1268*. Rabine Paving's attempt to manipulate the language in *Dow Chemical Co.* into recognizing a broader scope of review for administrative subpoenas issued in adjudicative hearings fails.

Finally, Rabine Paving argues that, even if the Magistrate Judge correctly determined what the scope of review is, the issues it has raised regarding the legal sufficiency of Local 150's affirmative defenses should be ruled on by this Court in this application to enforce the administrative subpoena. However, the legal sufficiency of Local 150's affirmative defenses in the underlying procedure is not at issue. As stated above, on an application to enforce an administrative subpoena this Court must determine whether the current inquiry is within the authority of the Board, whether the demand is too indefinite, whether complying with the subpoena would impose an unreasonable or undue burden on Respondents, and whether the information [*15] sought is reasonably relevant. *See Dow Chem. Co. v. Allen, 672 F.2d 1262, 1267 (7th Cir. 1982)* (citations omitted). Each of these questions is addressed in turn below.

Rabine Paving does not seriously contest the Board's authority to issue subpoenas in hearings unfair labor

Case 2:10-mc-00061-DGC   Document 25-1   Filed 08/09/10   Page 10 of 34

Page 6

2001 U.S. Dist. LEXIS 14090, *; 144 Lab. Cas. (CCH) P11,154

practice complaint hearings. (*Objections* at 6 n. 4.) This Court is satisfied that the Board was within its authority when it issued the administrative subpoena in question during the proceedings below. *See generally 29 U.S.C. § 161.*

Likewise, Rabine Paving does not seriously argue that the subpoena in question is too indefinite to be enforced. Rabine Paving does claim that Local 150 is engaged in a "fishing expedition" (*Response* at 11) but does not argue that the subpoena is too indefinite to be obeyed. The documents sought in the subpoena appear to be readily identifiable and definite enough to enable Rabine Paving to comply with the subpoena. *See NLRB v. Brown Transp. Corp., 620 F. Supp. 648, 653-54 (N.D. Ill. 1985)* ("the terms of the subpoenas were not unlimited, and the records were particularized to such records as would show certain specific [*16] information.'") (quoting *NLRB v. N. Trust Co., 148 F.2d 24, 29 (7th Cir. 1945)*). This Court finds that the subpoena is not too indefinite to be enforced.

Also, Rabine Paving also does not attempt to argue that the administrative subpoena in question places an unreasonable burden on it. [HN6] Generally, a court will refuse to enforce an administrative subpoena where "compliance would threaten the normal operation of a respondent's business." *EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 313 (7th Cir. 1981)* (citations omitted). Rabine Paving has made no such showing here.

The crux of Rabine Paving's objection to the Magistrate Judge's Recommendation and Report is that she failed to determine properly whether the information sought in the subpoena is reasonably relevant to the proceedings before the ALJ. In their briefs before the Magistrate Judge, all parties devoted considerable space and time to arguing the merits of the affirmative defense asserted by Local 150. Under the guise of contesting the relevance of the administrative subpoena, Rabine Paving would dearly like this Court to rule on the merits of the affirmative defenses asserted by Local 150 in [*17] the underlying proceedings. [1] Unfortunately for Rabine Paving, [HN7] the merits of claims or defenses in the underlying proceeding are not at issue when a district court is determining whether to enforce an administrative subpoena. *See EEOC v. Tempel Steel Co., 814 F.2d 482, 485 (7th Cir. 1987)* ("a timeliness defense may not be raised to block enforcement of an EEOC subpoena"); *EEOC v. A.E. Staley Mfg. Co., 711 F.2d 780, 788 (7th Cir. 1983)* ("defenses on the merits of an administrative charge may not be raised to block the enforcement of an administrative subpoena"); *NLRB ex rel. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC v. Dutch Boy, Inc., 606 F.2d 929, 933 (10th Cir. 1979)* ("because piecemeal appeals will disrupt and delay resolution of labor disputes, parties opposing the Board may not interpose de-

fenses to the merits of the underlying unfair labor practice charges in subpoena enforcement actions"); *NLRB v. Frederick Cowan & Co., Inc., 522 F.2d 26, 28 (2nd Cir. 1975)* ("no defense relating to the administrative proceedings can be raised" during an administrative subpoena enforcement action); *Hamilton v. NLRB, 177 F.2d 676, 676 (9th Cir. 1949)* [*18] (holding that the timeliness of an unfair labor practice charge cannot be raised during an administrative subpoena enforcement action); *Cudahy Packing Co. v. NLRB, 117 F.2d 692, 694 (10th Cir. 1941)* (a party in an administrative subpoena enforcement action "may not . . . assert its defenses in the principal case").

> 3   Rabine Paving originally had challenged the subpoena because it "was without basis in law." (*Response* at 1.) Rabine Paving has switched gears, perhaps because it recognizes that the merits of the affirmative defenses raised by Local 150 are not at issue in this administrative subpoena enforcement proceeding. Rabin Paving now argues that it is challenging the subpoena because it is "irrelevant." (*Objections* at 6.)

In her Report and Recommendation, the Magistrate Judge relied primarily on *EEOC v. Tempel Steel Co., 814 F.2d 482 (7th Cir. 1987)*, *EEOC v. A.E. Staley Manufacturing Co., 711 F.2d 780 (7th Cir. 1983)*, and *EEOC v. Bay Shipbuilding Co., 668 F.2d 304 (7th Cir. 1981)*, [*19] to support the principle that the merits of Local 150's affirmative defenses in the underlying proceedings are not a proper inquiry during administrative subpoena enforcement proceedings. Rabine Paving argues that those cases do not apply to the current matter because the administrative subpoenas issued in those cases were issued pursuant to *investigative* proceedings before an agency. (*Objections* at 3-4.) Rabine Paving's attempt to distinguish this line of cases from the current matter fails. Several courts have held that the merits of an underlying *adjudicative* proceeding are not a proper reason to deny the enforcement of an administrative subpoena. *See, e.g., NLRB ex rel. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC v. Dutch Boy, Inc., 606 F.2d 929 (10th Cir. 1979)* (cited with approval in *EEOC v. A.E. Staley Manufacturing Co., 711 F.2d 780 (7th Cir. 1983)*) (reviewing administrative subpoenas issued in a consolidated hearing on a union's election objections and unfair labor practice charges); *Hamilton v. NLRB, 177 F.2d 676 (9th Cir. 1949)* (enforcing an administrative subpoena issued in an unfair labor practice [*20] proceeding); *Cudahy Packing Co. v. NLRB, 117 F.2d 692 (10th Cir. 1941)* (enforcing an administrative subpoena issued in a consolidated representation case and unfair labor practice case).

Case 2:10-mc-00061-DGC   Document 25-1   Filed 08/09/10   Page 11 of 34

Page 7

2001 U.S. Dist. LEXIS 14090, *; 144 Lab. Cas. (CCH) P11,154

Even if there were no cases holding that the merits of affirmative defenses raised in underlying adjudicative proceeding are not before a district court in administrative subpoena enforcement proceedings, this Court is not convinced that the investigative/adjudicative distinction is nearly as important as Rabine Paving suggests. As noted earlier, the Seventh Circuit has recognized that it is not "inappropriate" for a district court to consider whether an administrative subpoena was issued during an investigative or adjudicative hearing when determining whether the information sought is *reasonably relevant. See Dow Chem. Co. v. Allen, 672 F.2d 1262, 1268 (7th Cir. 1982)*. The Seventh Circuit expressly recognized that the issues before a district court are the same for "adjudicatory subpoenas as well as . . . those issued for the purposes of investigation." *Id. at 1267*. The investigative/adjudicative distinction is simply not as important as Rabine Paving [*21] suggests.

This Court will inquire into the reasonable relevance of the administrative subpoena in question according to the standard approved by the Seventh Circuit. [HN8] For adjudicative subpoenas, the reasonable relevance of the information sought is "'measured against the charges specified in the complaint.'" *Id. at 1268* (quoting *F.T.C. v. Anderson, 203 U.S. App. D.C. 159, 631 F.2d 741, 745 (D.C. Cir. 1979))*. This matter arises out of an unfair labor practice filed by Rabine Paving against Local 150 alleging that Local 150 violated Section 8(b)(7)(A) of the NLRA, *29 U.S.C. § 158(b)(7)(A)*, when it allegedly picketed Rabine Paving's premises with a recognitional object when no question concerning representation could be raised. The existence and status of the alleged May 2000 contract between Rabine Paving and CIU is a matter under investigation in the current unfair labor practice proceeding. The information sought through the administrative subpoena at issue in the current matter is reasonably relevant to the unfair labor practice charge because the information sought is related to the existence and status of the alleged May 2000 [*22] contract between Rabine Paving and CIU. This Court finds that the information sought in the subpoena in question is reasonably related to the matters in question and under investigation below. Questions as to the legal sufficiency of the defenses raised by Local 150 in the proceedings below are not relevant to the Court's decision to enforce the administrative subpoena in question.

**CONCLUSION**

For the foregoing reasons, the Court adopts Magistrate Judge Nolan's Report and Recommendation with minor modifications. Local 150's Motion for an Order Setting a Hearing on a Rule to Show Cause is granted in part and denied in part. To the extent the motion requests the Court to order compliance with ALJ Sherman's August 17 and August 18, 2000 orders enforcing portions of Local 150's subpoena duces tecum, the motion is granted. To the extent the motion requests a hearing on a rule to show cause or a finding of contempt, the motion is denied. Because there are no remaining issues in dispute in this proceeding to compel obedience to the *subpoena duces tecum*, this case is hereby terminated.

**SO ORDERED** 9-6-01

**ENTERED:**

**HON. RONALD A GUZMAN**

United States [*23] Judge

**JUDGMENT IN A CIVIL CASE**

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the Court adopts Magistrate Judge Nolan's Report and Recommendation with minor modifications. Local 150's Motion for an Order Setting a Hearing on a Rule to Show Cause is granted in part and denied in part. To the extent the motion requests the Court to order compliance with ALJ Sherman's August 17 and August 18, 2000 orders enforcing portiions of Local 150's subpoena duces tecum, the motion is granted. To the extent the motion requests a hearing on a rule to show cause or a finding of contempt, the motion is denied. Because there are no remaining issues in dispute in this proceeding to compel obedience to the *subpoena duces tecum*, this case is hereby terminated.

Date: 9/6/2001

# Exhibit C




Analysis
As of: Aug 09, 2010

LEXSEE 1981 U.S. DIST. LEXIS 16139

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION v. FOOD TOWN STORES, INC.

### No. M-81-25

### United States District Court for the Middle District of North Carolina

### *1981 U.S. Dist. LEXIS 16139; 27 Fair Empl. Prac. Cas. (BNA) 111; 27 Empl. Prac. Dec. (CCH) P32,279*

### July 15, 1981

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner, the Equal Employment Opportunity Commission (EEOC), filed an application to enforce a subpoena against respondent employer. The court affirmed a magistrate judge's denial and the EEOC filed a motion for reconsideration.

**OVERVIEW:** The EEOC's subpoena sought detailed compilations of personnel figures prepared by the employer, or in the alternative, computer tape and any documents that summarized the information. The magistrate judge denied enforcement of the subpoena after the parties agreed with respect to all of the employer's personnel files. The EEOC continued to argue for enforcement of the subpoena as to the computer tapes, while acknowledging that the personnel files would provide all the information it needed. The employer claimed that the tapes contained valuable commercial information that it did not want to disclose. The court granted reconsideration to determine the EEOC's argument that the employer's failure to raise its objections to production of the computer tapes in the administrative subpoena proceedings waived its right to object in the judicial proceeding. The court held that it would be unreasonable to limit the employer's arguments because a subpoena enforcement proceeding was a de novo proceeding in the court and

the employer made diligent use of the administrative review process.

**OUTCOME:** The court granted the EEOC's motion for reconsideration of the denial of an application to enforce a subpoena, refusing to limit the employer's arguments to arguments that it raised in the administrative proceedings.

**CORE TERMS:** subpoena, tape, personnel files, reconsideration, administrative subpoena

**LexisNexis(R) Headnotes**

*Administrative Law > Judicial Review > Administrative Record > General Overview*
*Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement > Investigative Authority*
[HN1] Computer data are proper subjects of an administrative subpoena. Moreover, an employer served with an Equal Employment Opportunity Commission subpoena and making no effort to exhaust the available administrative remedies may not thereafter challenge the subse-

1981 U.S. Dist. LEXIS 16139, *; 27 Fair Empl. Prac. Cas. (BNA) 111;
27 Empl. Prac. Dec. (CCH) P32,279

quent judicial enforcement of that subpoena for any reason short of objections based on constitutional grounds.

*Administrative Law > Agency Investigations > Scope > Subpoenas*
*Civil Procedure > Pretrial Matters > Subpoenas*
[HN2] A subpoena enforcement proceeding is a de novo proceeding before a district court. Therefore, a court will not limit the arguments respondent may raise.

**COUNSEL:** [*1] Gerald S. Kiel, Regional Attorney, Judith A. Keeler, Supervisory Trial Attorney, and Regan A. Miller, Trial Attorney, Charlotte, N.C., for petitioner.

Charles F. Vance, Jr., David A. Irvin, Guy F. Driver, Jr., and Francis C. Clark (Womble, Carlyle, Sandridge & Rice), Winston-Salem, N.C., for respondent.

**OPINION BY:** GORDON

**OPINION**

GORDON, District Judge: -- On May 12, 1981, the United States Magistrate filed a Memorandum Order denying the Equal Employment Opportunity Commission's application to enforce a subpoena. Applicant appealed that order, and this Court ffirmed it on June 17, 1981. On June 26, 1981, applicant moved for reconsideration of that decision, and respondent replied on July 6, 1981. By this order, the Court grants the motion for reconsideration and again affirms the order of the United States Magistrate.

The Magistrate denied enforcement of the subpoena after the parties reached an agreement with respect to all of respondent's personnel files, the subject of the subpoena. Applicant had sought detailed compilations of personnel figures, prepared by respondent, or, in the alternative, "computer tape (to include all code sheets and programming data necessary for retrieving [*2] information from the tapes) and any documents which summarize this information." See "Modified Demand for Access To Evidene," attached to Exhibit J, to "Affidavit of James H. Troy." (Pleading Number 2 '.) During the hearing before the Magistrate on April 20, 1981, counsel for the parties agreed on an additional period of investigation of four weeks, and they agreed that respondent would give applicant full access to all personnel files. EEOC, while acknowledging that the personnel files would provide all the information it needed, continued to argue for enforcement of the summons with respect to computer tapes. Respondent objected to this demand,

saying the tapes contain valuable commercial information which it did not want to disclose.

> * Counsel should ignore reference to Pleading Numbers. They are for Court administrative purposes only.

The Magistrate, considering the length of the investigation, arguments of counsel, and the agreement to turn over personnel files, extended the investigation period through August 1, 1981, and denied enforcement of the subpoena. Applicant appealed the Magistrate's order, arguing, inter alia , that respondent's failure to raise its objections [*3] to production of computer tapes in the administrative subpoena proceedings waives its right to now object. The Court grants reconsideration only to discuss that argument.

EEOC appropriately argues that [HN1] computer data are proper subjects of an administrative subpoena. *Graniteville Co. (Sibley Div.) v. EEOC, 438 F.2d 32, 41, 3 FEP Cases 155 (4th Cir. 1971).* Moreover, "an employer served with an EEOC subpoena and making no effort to exhaust the available administrative remedies may not thereafter challenge the subsequent judicial enforcement of that subpoena for any reason short of objections based on constitutional grounds." *EEOC v. Cuzzens of Georgia, Inc., 608 F.2d 1062, 1064, 21 FEP Cases 803 (5th Cir. 1979).* (Emphasis added.) However, this respondent has made diligent use of the administrative review process, as amply shown by the administrative record. The Court finds it unreasonable to require an employer to forego every argument it did not raise before an administrative tribunal. Judge Murray's reasoning on this question is apposite:

> The Court does not study the record and determine whether the Director or Compliance or the Commission acted properly in refusing to quash [*4] a subpoena. [HN2] A subpoena enforcement proceeding is a de novo proceeding before this Court. Therefore, the Court sees no reason to limit the arguments respondent may raise and will not do so.

*EEOC v. U.S. Fidelity & Guaranty Co., 414 F. Supp. 227, 232, 13 FEP Cases 990 (D.Md.), affirmed, 538 F.2d 324 (4th Cir. 1976)* (table).

Therefore, the Court again finds that the Magistrate's ruling is not closely erroneous or contrary to law. *28 U.S.C. § 636(b)(1)(A).* Therefore, the Magistrate's order is hereby AFFIRMED.

Exhibit D

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NATIONAL LABOR RELATIONS) BOARD, | No. 2:09-cv-2546-PHX-JAT |
| Plaintiff, | **AMENDED ORDER** (amending Order at Doc. # 25) |
| vs. | |
| CEMEX, INC., | |
| Defendant. | |

Pending before the Court is National Labor Relations Board's ("NLRB") application pursuant to §11(2) of the National Labor Relations Act, 29 U.S.C. § 161(2) for compliance on the part of CEMEX, Inc. ("CEMEX") with a subpoena duces tecum dated September 4, 2009 (Doc. # 1). The Court held an initial hearing on December 7, 2009. On the basis of the December 7 hearing and the arguments contained in the parties' moving papers, the Court will address in part the issues presented by NLRB's application. The remaining issues will be considered at the January 22, 2010, hearing. In short, in this Order the Court will address CEMEX's request for a protective order and to seal the discovery documents, reserving argument and determination on the remaining issue of whether the Court should enforce the September 4, 2009, subpoena duces tecum.

///

///

## I.      BACKGROUND

On June 30, 2009 the NLRB's General Counsel issued and served on CEMEX a Fourth Amended Consolidated Complaint and a notice of hearing charging CEMEX with violating various statutes for, *inter alia*, diverting work from its union-represented employees to its non-unionized workforce and closing two of its unionized facilities.  The NLRB contends CEMEX's conduct was undertaken based on its employees' union activities. (Doc. #2).  On September 4, 2009, the NLRB issued a subpoena duces tecum to CEMEX's Custodian of Records. (Doc. #2, Ex. A).  Upon CEMEX's refusal to produce documents the NLRB took action in this Court on October 5, 2009 for the enforcement of the September 4, 2009 subpoena duces tecum against CEMEX.

## II.     CEMEX's REQUEST FOR PROTECTIVE ORDER AND TO SEAL DOCUMENTS

### A.      Protective Order Is Granted

CEMEX claims it needs a protective order with regards to Items 23 and 28 because those documents contain competitively and financially sensitive information, and also contain customer information.[1]

"[T]he public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). The district court is allowed to override the presumption of public access where "good cause" is shown.  FED.R.CIV.P. 26(c); *Phillips*, 307 F.3d at 1210.  "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210-11. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9 Cir. 1992) (quotation

---

[1]The ALJ found good cause for granting a protective order regarding the profit/loss statements and the customer information as to Item 23; however, denied the request to seal the documents.

1   omitted).  The Court will balance the public and private interests to decide if a protective

2   order is necessary if particularized harm is found. *Phillips*, 307 F.3d at 1211.

3   CEMEX has a substantial interest in protecting the confidentiality of their customer

4   lists and profit/loss statements from the general public, and more specifically, their

5   competitors and potential competitors.  If this information were allowed to be public,

6   CEMEX could suffer considerable harm with competitors   potentially undercutting

7   CEMEX's prices to all of their customers with very little effort.  Some of the harmful

8   information requested would include customer name, volume bought, price, and place of

9   delivery.  Furthermore, CEMEX claims if the information was public, labor unions would

10  use it to bargain against CEMEX.  Accordingly, CEMEX has provided specific examples and

11  articulated reasoning as to why there would be harm absent a protective order.

12  CEMEX's showing of good cause is stronger when balanced against the public's

13  interest to documents during the discovery process.  The right to inspect and copy judicial

14  records is generally "justified by the interest of citizens in keeping a watchful eye on the

15  workings of public agencies" and "understanding the judicial process." *Kamakana v. City*

16  *and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citations and quotations

17  omitted). However, "[t]he public  has less of a need for access to court records attached only

18  to non-dispositive motions because those documents are often 'unrelated, or only tangentially

19  related, to the underlying cause of action.'" *Id.* at 1179 (quotation omitted).

20  Therefore, given CEMEX's considerable need for protection of commercially

21  sensitive information and the public's relatively low need for access to documents produced

22  during discovery, the balance weighs in favor of issuing a protective order as to Item 23 and

23  28.  It is important to note that the documents produced during discovery might never make

24  it onto any type of dispositive motion, or be admitted into evidence at trial.

25          **B.      Sealing Documents is Premature**

26                  **1.      In General**

27          CEMEX argues that they need the additional protection of having the documents

28  sealed.  However, this Court disagrees, and finds that putting the documents under seal would

- 3 -

be premature. *See, e.g.*, LRCiv 5.6 ("The Court generally will not enter an order that gives advance authorization to file documents under seal that are designated . . . under a protective order or confidentiality agreement."). Since the case is still in the discovery stages, many of the documents produced will be "unrelated, or only tangentially related, to the underlying cause of action." *Kamakana*, 447 F.3d at 1179. "Materials unearthed during discovery . . ." are private and not a part of the judicial record, which are "public documents almost by definition, and the public is entitled to access by default." *Id.* at 1180 (citation omitted). Therefore, sealing documents that are already subject to a protective order at the discovery stage is unnecessary.

If the court were to add the additional protection of a seal, "'once the [sealed discovery] documents [were] made part of a dispositive motion [e.g., a summary judgment motion ruled upon by the court] . . . they [would] lose their status of being raw fruits of discovery,' and no longer enjoy protected status 'without some overriding interests in favor of keeping the discovery documents under seal.'" *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) (quotation omitted).  After losing status as a sealed document, in order to keep it sealed when attached to a dispositive motion or when admitted to the trial record, it will have to meet the "compelling reasons" standard. *Kamakana*, 447 F.3d 1179.  Without more, a "good cause"  showing will not satisfy the "compelling reasons" test. *Id.* at 1180.  Because this Court finds sealing the discovery documents premature, it does not address whether CEMEX has "compelling reasons" for protection under seal.

## 2.     Freedom of Information Act ("FOIA")

CEMEX also argues that additional protection above a protective order is needed because the information is subject to the FOIA. (Doc. #7 at 9).  CEMEX claims not having the documents sealed would leave open the possibility that the unions or any competitor could request the information, essentially eviscerating the protection of the confidential information. *Id.*  The NLRB argues that an FOIA request for documents is too speculative and an insufficient reason to seal the documents. (Doc. #10 at 6).

1    This Court agrees with the NLRB that the *potential* for an FOIA request is insufficient

2  to require the sealing of the documents.  There is no guarantee that an FOIA request will be

3  encountered in the present case.  Furthermore, the  "FOIA provisions offer sufficient

4  protection for [CEMEX] during the period . . . which charging parties may seek information

5  from their files." *E.E.O.C. v. AON Consulting, Inc.*, 149 F.Supp.2d 601, 609 (S.D. Ind.

6  2001).  CEMEX is required to receive notice of such requests for commercially sensitive

7  information so that they have an opportunity to object to its disclosure. *See* 5 U.S.C. §

8  552(b)(4); 29 C.F.R. § 1610.19; *AON Consulting*, 149 F.Supp.2d at 609.  In addition to the

9  notice requirement, the protective order language requires the NLRB to return the documents

10  fifteen (15) days after the close of the record.

11    Therefore, for the reasons stated above, the Court denies CEMEX's request to seal the

12  documents.

13  **III.    JOINT DOCUMENT AND PRODUCTION COSTS STATEMENT**

14    The Court will set argument on the remaining issue for January 22, 2010, at 1:30 PM.

15  The Court will not revisit the protective order and sealing issues.

16    The parties shall jointly prepare and file by January 15, 2010,  a statement of each of

17  NLRB's requests currently before the Court, organized as follows:

18    1.  A description of the item or category of items requested and rationale and

19  anticipated need for the item(s).

20      A.  The objection or objections by defendant to the request and rationale for

21      each objection.  If the objection includes length of time needed to respond to

22      the request, or additional cost incurred in responding to the request (in the

23      event the Court decides to shift the burden of cost to the NLRB), the

24      respondent shall specify how much time or cost is anticipated.

25      B.  If the respondent proposes an alternative source of the information sought,

26      then  Plaintiff shall specify in detail why the alternative is unacceptable and

27      will not substantially suffice for the purpose requested.

28    2.  Next item, etc.

1    Accordingly,

2    **IT IS ORDERED** that National Labor Relations Board's application pursuant to

3    §11(2) of the National Labor Relations Act (Doc. # 1) is granted in part, denied in part, and

4    Ordered to remain pending for further resolution at the January 22, 2010, hearing.

5    **IT IS FURTHER ORDERED** that CEMEX's Motion for Leave to File Sur-Reply

6    (Doc. # 14) is denied.

7    **IT IS FURTHER ORDERED** setting oral argument on the remaining issues as

8    discussed above for January 22, 2010, at 1:30 PM in Courtroom 503, 401 West Washington

9    Street, Phoenix, AZ 85003.  To assist the court reporter, the parties shall prepare and bring

10   to the oral argument a Table of Authorities, in alphabetical order, which includes all of the

11   authorities on which the parties will rely at oral argument. The Table of Authorities shall not

12   exceed the scope of the parties pleadings.

13   **IT IS FURTHER ORDERED** that the parties shall jointly prepare and file the

14   document above referenced on or before January 15, 2010.

15   The Court enters the following with respect to the Protective Order discussed above:

16   **IT IS ORDERED** that documents produced by CEMEX to Counsel for General

17   Counsel that are marked "Confidential" shall only be disclosed to the ALJ and the court

18   reporter, Counsel for General Counsel and its staff, and witnesses who are under oath and

19   actually testifying about such Confidential Information in the underlying proceeding.

20   Confidential Information produced by CEMEX shall be secured and maintained by Counsel

21   for General Counsel in a manner so as to avoid disclosure of its contents to any persons not

22   identified herein.  All witnesses who are shown such Confidential Information during their

23   testimony are hereby ordered to maintain such information in confidence and to not disclose

24   the contents of such Confidential Information outside their testimony in this proceeding.

25   **IT IS FURTHER ORDERED** that Confidential Information introduced in these

26   proceedings shall not be disclosed to or discussed with the Charging Party Unions or their

27   agents or representatives.  Specifically, Counsel for General Counsel and witnesses in these

28   proceedings are hereby precluded from disclosing Confidential Information to or discussing

- 6 -

1  Confidential Information with the Charging Party Unions, their agents or their

2  representatives. Further, the Charging Party Unions and any competitors shall be excluded

3  from the hearing at times when the Confidential Information is being discussed.

4      **IT IS FINALLY ORDERED** that this Order will continue to be binding throughout

5  and after the final disposition of this action. All Confidential Information shall be used only

6  for the prosecution and/or defense of this action. Within fifteen days (15) after the close of

7  the record, Counsel for General Counsel shall return all Confidential Information and any

8  copies thereof (including summaries and excerpts) to CEMEX's Counsel.

9      Amended *nunc pro tunc* effective 21st day of December, 2009.

10      DATED this 1st day of February, 2010.

11

12                           James A. Teilborg

13                         United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit E



LEXSEE 2008 U.S. DIST. LEXIS 113126



Positive
As of: Aug 09, 2010

**NATIONAL LABOR RELATIONS BOARD, Plaintiff, v. BCI COCA-COLA BOT-
TLING COMPANY, Defendant.**

**Civil No.08cv55 WQH (NLS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
CALIFORNIA**

*2008 U.S. Dist. LEXIS 113126*

**March 7, 2008, Decided
March 7, 2008, Filed**

**SUBSEQUENT HISTORY:** Adopted by, Application granted by *NLRB v. BCI Coca-Cola Bottling Co., 2008 U.S. Dist. LEXIS 43641 (S.D. Cal., May 22, 2008)*

**CORE TERMS:** subpoena, recommends, protective order, investigative, regional office, deposition, pre-complaint, disclosure, unfair, judicial notice, recommendation, investigatory, proprietary, subpoenaed, overbroad, compelled, reporter, issuing, revoke, order requiring, administrative subpoena, labor practices, matter jurisdiction, written application, confidential information, confidentiality, investigating, confidential, investigate, relevance

**COUNSEL:** [*1] For National Labor Relations Board, Plaintiff: Patrick J Cullen, LEAD ATTORNEY, National Labor Relations Boad, Baltimore, MD.

For BCI Coca-Cola Bottling Company, Defendant: Jennifer B Robinson, LEAD ATTORNEY, Miller & Martin PLLC, Nashville, TN; Joseph Y. McCoin, III, LEAD ATTORNEY, Miller and Martin PLLC, Chattanooga, TN; Warren L. Nelson, LEAD ATTORNEY, Fisher & Phillips LLP, Irvine, CA.

**JUDGES:** Hon. Nita L. Stormes, United States Magistrate Judge.

**OPINION BY:** Nita L. Stormes

**OPINION**

**REPORT AND RECOMMENDATION FOR OR-
DER GRANTING PLAINTIFF'S APPLICATION
FOR ORDER REQUIRING COMPLIANCE WITH
ADMINISTRATIVE SUBPOENA AND REQUIR-
ING SUBMISSION OF PROPOSED PROTECTIVE
ORDER**

[Doc. No. 1]

Plaintiff National Labor Relations Board (the Board) filed an application for an order requiring defendant BCI Coca-Cola Bottling Company (BCI) to comply with an administrative subpoena. BCI opposes. The district judge referred the application to this Court for a report and recommendation pursuant to *28 U.S.C. § 636(b)* and *Federal Rule of Civil Procedure 72(a).* This Court found the matter suitable for decision without oral argument. Having considered the entire record before it, this Court **RECOMMENDS** that the district judge **GRANT** the Board's [*2] application.

**REQUEST FOR JUDICIAL NOTICE**

The Board asks this Court to take judicial notice of the Rules and Regulations governing the Board's conduct

Case 2:10-mc-00061-DGC   Document 25-1   Filed 08/09/10   Page 25 of 34

Page 2
2008 U.S. Dist. LEXIS 113126, *

(Rule(s)), as published in *24 Fed. Reg. 9095*. Application for Order Requiring Compliance (Application) P 2 [Doc. No. 1-1]. This Court recommends that the district court take judicial notice of the Rules pursuant to *44 U.S.C. § 1507* ("The contents of the Federal Register shall be judicially noticed").

## RELEVANT FACTS

The Board's Application stems from two underlying unfair labor practices charges brought by Teamsters Local No. 683 from San Diego and Teamsters Local No. 952 from Orange (collectively, the Charging Parties) and currently pending before the Board. [1] Application P 3. The Board, through the Region 21 regional office in Los Angeles (Regional Office), is investigating charges that the Coca-Cola Bottling Company of San Diego and defendant BCI (collectively, the Charged Parties) violated the National Labor and Relations Act (the Act), *29 U.S.C. § 161, et seq.* The Charging Parties accuse the Charged Parties of failing to bargain in good faith with their employees' exclusive collective-bargaining representatives regarding (1) the transfer [*3] of bargaining-unit employees to a facility in Oceanside, California; and (2) the effects of opening the Oceanside facility on their bargaining-unit employees working in San Diego, Orange, and Rancho Cucamonga. Application P 3, Ex. 1. The Charging Parties allege that BCI has information relevant to the Board's investigation of these charges. Application P 3. The Board needs the information to help them determine whether they should issue a complaint against either or both of the Charged Parties. [2] Application P 3.

> 1   The charges are under *Coca-Cola Bottling Company of San Diego,* Case 21-CA-37682 and *BCI Coca-Cola Bottling Company of Los Angeles, t/a, Coca-Cola Bottling Company of Southern California,* Case 21-CA-37683.
>
> 2   On August 2, 2007, the Board certified Local No. 683 as the collective bargaining representative for the Oceanside facility. Both Charging Parties are participating in collective bargaining for the Oceanside facility. Nelson Decl. P 3.

From May through August 2, 2007, BCI responded to the Board's several requests for information and provided some documents to the Board. *See* Warren Decl. Exs. A-H. In addition to the written statements and documents, BCI's Director of Labor [*4] Relations participated in an investigative interview at Region 21's offices. Nelson Decl. P 4. Then, on August 7, 2007, the Regional Office issued a subpoena duces tecum to BCI's Custodian of Records (COR) pursuant to Rule *§ 102.31.* Application P 4, Ex. 2. The investigative subpoena [3] required the COR to appear before the Regional Office on

August 21, 2007 and give testimony and documents relevant to the alleged unfair labor practices. Application P 4, Ex. 2. BCI filed a petition to revoke the subpoena on August 20, 2007. Application P 6, Ex. 4. BCI objected to the subpoena on the grounds that the subpoena seeks information that is irrelevant, overly burdensome to produce, vague and overbroad in scope, confidential, and protected by the attorney-client privilege. Application Ex. 4, p.16. The Regional Office agreed to modify the temporal scope of certain requests in the subpoena. Application Ex. 5, p.21. The Board ultimately denied the petition to revoke the modified subpoena on November 20, 2007. Application Ex. 5, p.21.

> 3   The Board concedes that it issued an investigative subpoena. An investigative subpoena is one used to gather evidence to determine whether a complaint or compliance [*5] specification should issue. Application P 4; Opp'n, p.5.

On December 5, 2007, the Board's Regional Director ordered the COR to appear at the Regional Office on December 20 to provide the testimony and documents described in the subpoena. Application Ex. 6, pp.23-24. The Regional Director and BCI then agreed to reschedule the COR's appearance for December 21. [4] Application P 7. But the COR failed to appear that day. Application Ex. 7, pp.25-31. Instead, one of BCI's lawyer's, Warren Nelson, appeared--not as the Charged Parties' COR--but as their attorney. Application Ex. 7, pp.31-51. He gave some redacted documents to the Board. Application Ex. 7, pp.31-51. He had additional responsive documents but withheld them, as well as the originals of the redacted documents, on the basis that they contain proprietary trade secrets. Application P 8, Ex. 7, pp.46-47. Mr. Nelson explained that he had no personal knowledge regarding the documents' contents, was not involved in their creation, and was not responsible to maintain them for the Charged Parties. Application Ex. 7, p.39.

> 4   BCI says that they only committed to producing documents, not to appearing for a deposition, for the rescheduled appearance [*6] on December 21. Nelson Decl. P 6 [Doc. No. 7-2].

At the December 21 appearance BCI offered the Board the opportunity to conduct an in camera review of all the withheld information, and/or to receive copies of that information upon assurance that the Board would keep the information confidential. Nelson Decl. P 9. The Board declined the offers. Nelson Decl. P 9. BCI explains that it does not want to turn over any proprietary information absent protective measures because the Charging Parties deal directly, on a regular basis, with BCI's competitors, namely, Southern California Pepsi bottlers. Coyle Decl. P 3 [Doc. No. 7-8]. The information

requested included documents discussing BCI's distribution model in Southern California, which BCI alleges would lead to competitors learning about the volume predictions for its products and its expansion plans. Coyle Decl. P 4; Opp'n, p.3, n.1.

## SUBJECT MATTER JURISDICTION.

District courts have the power to order enforcement of Board-issued subpoenas where the subpoenaed party engages in contumacy or refuses to obey the subpoena. *29 U.S.C. § 161(2)*. The appropriate district court is in the district within which the inquiry is carried on or where the [*7] party engaging in the contumacious conduct is found or resides or transacts business. *29 U.S.C. § 161(2)*. Here, BCI resides and transacts business within this judicial district. Mem. Ps&As, p.4.

When enforcing an administrative subpoena under the Act, the Court shall treat the Board's application as a dispositive matter. *NLRB v. Cable Car Advertisers, Inc., 319 F.Supp. 2d 991, 995-996 (N.D. Cal. 2004)*. The purpose of commencing the action with an application instead of a complaint is to ensure "the expeditious discharge of the agency's responsibilities." *NLRB v. Interstate Dress Carriers, Inc., 610 F.2d 99, 112 (3d Cir. 1979)*; *see 29 U.S.C. § 161(2)* ("application...order rather than judgment...no formalities of a civil suit"). Here, the Board filed the Application to compel enforcement of its subpoena. Based on the applicable law, this Court recommends finding that the Application is properly before this Court and that this Court has subject matter jurisdiction to issue an order on it.

## DISCUSSION

The Board alleges that BCI's failure to comply with the subpoena constitutes contumacious conduct within the meaning of *section 11(2)* of the Act. Application P 9. It argues that BCI's conduct has [*8] impeded and continues to impede the Board in investigating the unfair labor charges against the Charged Parties, and from carrying out its duties and functions under the Act. Application P 9. BCI argues that the Court should not enforce the subpoena because (1) there are defects in the Board's application; (2) the subpoena is overbroad; and (3) the Board is unwilling to take any steps to ensure BCI's proprietary information will remain confidential. Opp'n, p.2.

### Legal Standard.

Courts shall conduct a narrow scope of inquiry for an agency subpoena enforcement proceeding. *NLRB v. North Bay Plumbing, Inc., 102 F.3d 1005, 1007 (9th Cir. 1996)* (finding the Board's investigative subpoenas were not overly broad and affirming their enforcement). When deciding whether to enforce agency subpoenas, courts shall consider whether: (1) Congress granted the author-

ity to investigate; (2) procedural requirements were followed; and (3) the evidence sought is relevant and material to the investigation. *Id.* (citations omitted) If this three-fold test is satisfied, the Court must enforce the subpoena, unless the objecting party can prove that the information sought is unreasonable because it is unduly burdensome [*9] or overly broad. *Id. at 1008.*

### Analysis.

### 1. The Board's Authority to Investigate.

Congress has granted the Board authority to investigate unfair labor charges: "The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation." *29 U.S.C. § 161(1)*. "The language of [the Act] is clear. The Board may issue subpoenas requiring both the production of evidence and testimony during the investigatory stages of an unfair labor practice proceeding." *NLRB v. SEIU, Local 521, 2008 U.S. Dist. LEXIS 3308, 2008 WL 152176, *2 (N.D. Cal. 2008)* (citing *North Bay Plumbing, 102 F.3d at 1008*).

### 2. Procedural Requirements for the Board's Application.

#### a. Procedure When Issuing the Subpoena.

BCI challenges the procedure the Board followed when issuing the subpoena, and says the Board did not show compliance with the written application requirement. When issuing a subpoena, the Board must complete a written application that includes a statement to the Regional Director detailing the scope and relevance of the information sought. *29 C.F.R. § 102.31(a)*; Rules, [*10] § 1170.1.

BCI says the Board has not shown the written application from Field Examiner Tirza Castellanos to show that it complied with *section 102.31*. But the Rules provide that the application need not be served on the responding party. *29 C.F.R. § 102.31*. Even though not required, the Board did show that it complied with this requirement, as explained in the declaration of William Pate. *See* Pate Declaration, Reply, Ex. 2 [Doc. No. 8]. This Court recommends finding that the Board followed the requisite procedure under *29 C.F.R. § 102.31(a)* and properly issued the subpoena.

#### b. Pre-Complaint Testimony.

BCI argues that under the Rules, a pre-complaint subpoena can only compel the production of documents, and not testimony. It says that at the pre-complaint stage the Board can hold only an investigatory interview, and not a deposition. BCI says that the Board can hold a

deposition later only if a complaint issues. The Board says that it is not seeking to compel a pre-complaint deposition, but seeks to do an investigatory examination under oath, before a court reporter, as permitted by the Rules.

The Rule specifically says that "[w]itnesses shall be examined orally under oath, except that [*11] for good cause shown after the issuance of a complaint, testimony may be taken by deposition." *29 C.F.R. § 102.30.* Further, the Rule regulating the general procedures for issuing subpoenas and petitions to revoke them, *29 C.F.R. § 102.31,* "does not expressly prohibit the use of pre-complaint subpoenas requiring testimony." *North Bay Plumbing, 102 F.3d at 1008; see SEIU, 2008 U.S. Dist. LEXIS 3308, 2008 WL 152176* (recommending that Respondent's COR be deposed and answer any and all questions relevant and material to the subpoenaed documents). "In fact, *section 102.31(e)* addresses the rights of 'persons compelled to submit data or evidence in the nonpublic investigative stages of proceedings' to inspect transcripts of their testimony and copy documents produced."

In *North Bay Plumbing,* the Board issued several investigative subpoenas. The subpoenas required the COR to testify and produce documents and also required three North Bay officers to appear and testify. *Id. at 1007.* The Ninth Circuit affirmed the district court's order enforcing the Board's investigative subpoenas and rejected North Bay's procedural and substantive due process arguments. *Id. at 1009.*

Here, the Board seeks to do an investigatory examination [*12] under oath and before a court reporter. *Section 102.30* permits the Board to conduct such an examination. This oral examination--while under oath and transcribed--is, according to the Rules, distinct from a deposition taken in conjunction with a post-complaint administrative proceeding. Further, the ruling case law requires that such investigative subpoenas, particularly ones that seek the testimony of a COR, must be enforced. For these reasons, this Court recommends finding that the Board's investigative subpoena requiring BCI's COR to appear and provide testimony under oath before a court reporter is proper.

### 3. Scope of the Information Sought.

#### a. Relevance.

BCI says that because the Board has received an accurate and representative sampling of the available documents and has refused to inspect remaining documents, any additional production will not change the Board's mind on whether a complaint should issue. In other words, BCI argues that the subpoena seeks infor-

mation beyond what is actually needed and is thus intrinsically overbroad.

Information sought through a subpoena is relevant so long as the subpoena "touches a matter under investigation." *Cable Car Advertisers, 319 F.Supp. 2d at 998.* [*13] The Board is investigating allegations that BCI failed to bargain in good faith regarding the opening of a new facility and the effects of that decision. The Board subpoenaed eight categories of documents that all relate to BCI's decision to move to the Oceanside facility. *See* Application Ex. 2, pp.9-10. The evidence sought in the subpoena is relevant to the Board's investigation. BCI's disingenuous argument that the Board already has a "representative sampling" of the documents has no impact on the documents' relevance. Because the information sought is not overbroad in scope, this Court recommends finding that the subpoena is proper because it seeks evidence that is relevant and material to the investigation.

#### b. Confidential Information.

BCI argues that if the Court orders compliance with the subpoena, it should ensure the confidentiality of BCI's documents and enter a protective order that limits the Board from disclosing the requested information to anyone other than its own staff. BCI also asks that public electronic access not be provided to the documents contained in Exhibit 7 of the Board's application, which consists of BCI's responses to date to the subpoena. The Board argues [*14] that BCI waived its argument for a protective order because it did not raise that objection in its petition to revoke or modify the subpoena. If the Court does, however, require a protective order, the Board requests that it be narrowly limited to affect only the Board's investigation, so that if this matter does proceed to complaint and trial, any limit on public disclosure of documents would be left to an administrative law judge.

The Federal Rules of Civil Procedure apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States agency under a federal statute. *Fed. R. Civ. Proc. 81(a)(5).* If deciding to enforce a subpoena, a court can protect the production of confidential information produced in response to the subpoena by use of a protective order. *Cable Car Advertisers, 319 F.Supp. at 999* (stating that any privacy and/or proprietary concerns may be addressed by producing documents subject to a protective order); *SEIU, 2008 U.S. Dist. LEXIS 3308, 2008 WL 152176 at *3* (finding that "any confidentiality concerns attendant to the disclosure of some information called for by the subpoenas . . . may be addressed by production subject to a protective order").

BCI [*15] has raised legitimate concerns regarding the production of its confidential information and poten-

tial for disclosure to its competitors. This Court recommends finding that these issues can be properly addressed through use of a protective order. If this Court enters a protective order, it should be limited to only the Board's investigation, so that if this matter proceeds to a complaint or trial, an administrative law judge familiar with the case can provide prompt decisions regarding the public disclosure of evidence.

Regarding the public filing on this Court's docket of the documents that BCI has already produced, this Court recommends finding that BCI waived its argument that those documents be precluded from public view. BCI redacted those documents and produced them without mentioning any need to protect them from public disclosure. And, at the time BCI produced those documents, it made a conscious decision to withhold other documents on the basis of confidentiality. Therefore, this Court recommends finding no good cause to strike BCI's produced documents from the public record.

## CONCLUSION

Based on the preceding discussion, this Court **RECOMMENDS** that the district court:

1. Take judicial [*16] notice of the Rules pursuant to *44 U.S.C. § 1507*;

2. Find that it has subject matter jurisdiction to hear this Application, which was properly brought before this Court;

3. Find that the subpoena is procedurally proper; and

5. **GRANT** the Board's application for an order to enforce the subpoena.

This Court **FURTHER RECOMMENDS** that:

1. The parties be compelled to lodge a proposed joint protective order limited to affect only the Board's investigation, within seven days of the district judge's order;

2. BCI be compelled to comply with all the document production required by the subpoena within ten days of the district judge's order; and

3. BCI be compelled to provide its custodian of records to appear before the Board to answer any and all questions, under oath and before a court reporter, relevant and material to the subpoenaed documents, within thirty days of the district judge's order.

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to *28 U.S.C. § 636(b)(1)*. Any party may file written objections with the Court and serve a copy on all parties on or before *March 17, 2008.* The document should be captioned "Objections to [*17] Report and Recommendation." Any response to the objections shall be filed and served on or before *March 24, 2008.* Failure to file objections within the specified time may affect the scope of review on appeal. *Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).*

DATED: March 7, 2008

/s/ Nita L. Stormes

Hon. Nita L. Stormes

U.S. Magistrate Judge

Exhibit F

| Category No. | Information Sought | PMT's Objection |
|---|---|---|
| 6 | Documents showing the equipment, land, building, and assets owned, leased, or otherwise used by Respondent PMT, along with the location and ownership or leasehold interest in such, including vehicle registrations for all vehicles, and lease, sublease, rental, or purchase agreements. | **Confidentiality and Relevance –**<br><br>The requested documents, including leases, contain information that is confidential, private, and highly sensitive. The confidential information includes the term of the lease, the commencement and termination dates, the base rent, the lessee's broker, and the renewal provisions (collectively, the "Confidential Lease Information"). Disclosure of the Confidential Lease Information would cause significant harm to PMT because PMT relies on its bargaining power to maintain a competitive edge in the market. If PMT's competitors were to have access to the Confidential Lease Information, PMT's competitors could use the information to compete for the leased premises and compete for PMT's customers with an unfair advantage by knowing PMT's internal operating expenses. The Confidential Lease Information is also irrelevant to issues in this case. |
| 8 | Documents, including customer lists, accounting ledgers, or accounting summaries, showing work performed by Respondent PMT, for whom the work was performed, and the type of work performed, since January 2009 | **Unduly Burdensome and Confidential** – Responding to this request would require manual review of all of PMT's transport invoices since January 2009 in order to protect and redact confidential patient information that is protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936, 42 U.S.C. § 1320 *et. seq.* PMT is prohibited by HIPAA from disclosure of the Invoices because they contain "individually identifiable health information." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1089 (9th |

| | | |
|---|---|---|
| | | Cir. 2007) (citing 45 C.F.R. § 160.202); *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality").<br><br>This would entail the review of nearly 900,000 documents and would require thousands of hours of time to gather and review the documents. *See* Roeder Supplemental Declaration in Support of PMT's Opposition to Application for Subpoena Enforcement at ¶¶43-46.<br><br>Additionally, the invoices contain highly sensitive business information, which, if revealed to PMT's competitors, would cause significant harm to its competitive position in the market. Were the Invoices viewed in aggregate by PMT's competitors, PMT's competitors could use the information gleaned from the Invoices to target facilities at which PMT has a significant presence. *Id.* at ¶¶ 47-49. |
| 10 | Documents showing the name, job classification, wage rates, and dates of hire and end of employment of each employee employed by Respondent PMT since January 2009 | **Irrelevant and Not Material** - PMT has provided the NLRB with lists of employees who are part of the alleged bargaining unit. (Roeder Declaration at ¶ 23). However, the information for employees that are outside the bargaining unit is irrelevant and immaterial to the NLRB's investigation. |
| 11 | Documents showing the name of each employee listed in response to paragraph 10 who has also worked for Respondent Comtrans at any time since January 2009, including each such person's | **Irrelevant and Not Material** - Same objection at No. 10 above. Moreover, this category seeks information on employees who are not in the bargaining unit. |

| | | job classification, wages rates, and dates of hire and of employment with Respondent Comtrans. | |
|---|---|---|---|
| 14 | | Documents as will show customers in common between Respondent PMT and Respondent Comtrans, and the type and dates of work performed for such customers, since January 2009. | **Unduly Burdensome and Confidential** – Same objections as No. 8 above. |
| 19 | | Documents as will show the name of the principal bookkeepers and/or accountants used by Respondent PMT. | **Irrelevant and Not Material** – This category seeks information that is wholly unrelated to the underlying investigation. There is no allegation against PMT's bookkeepers and accountants. |
| 24 | | All licenses, permits, certificates of need or other documents constituting an authorization to operate any business held by or issued to Respondent PMT, and/or Respondent Comtrans, and/or Bob Ramsey and/or Pat Cantelme, and all applications and other documents filed by Respondent PMT, and/or Respondent Comtrans, and/or Bob Ramsey and/or Pat Cantelme with respect to such licenses, permits, certificates or other authorizations to operate. | **Irrelevant and Not Material** – This request seeks information on businesses that are not parties to the underlying Complaint and seeks information that is completely unrelated to the investigation. |
| 25 | | Documents relating or referring to any decision to discontinue using any Unit employees to operate routes in certain geographical areas and/or types of calls, including such documents as will show the identity of the individuals who made this decision, any documents relied | **Vague** - This request seeks information relating to "routes" in certain areas and the discontinuance of such "routes." Because ambulances do not operate on a route system, PMT is unable to respond to this request. |

| | | on by such individuals in making this decision, and to whom, if anyone, those routes and areas were transferred, including without limitation, Respondent Comtrans. | |
|---|---|---|---|
| | 26 | Document showing any communication between the Respondents and the Union referencing the decision to discontinue using the Unit employees to operate routes in certain geographical areas and/or types of calls and/or the decision to transfer those routes and areas to others persons or entities, including without limitation, Respondent Comtrans. | **Vague -** This request seeks information relating to "routes" in certain areas and the discontinuance of such "routes." Because ambulances do not operate on a route system, PMT is unable to respond to this request. |
| | 27 | Documents showing which customers, clients, or companies to which Respondent PMT provided general transport services and 911/Operations since January 2009. | **Unduly Burdensome and Confidential-** Same objections as No. 8 above. |
| | 38 | Documents, including, but not limited to, personnel and similar files and their contents, as will show any employee who was discharged by Respondent PMT and the underlying reason for the discharge, during the period of July 2008 through the present. | **Unduly Burdensome -** Gathering and reviewing the documents requested would be an enormous undertaking and create serious difficulties for PMT. The information requested would require individualized review of hundreds of personnel files to determine who was terminated and for what reason. This would cause days of disruption to the normal business duties of PMT's human resources personnel. Without waiving its objection to the disclosure of the foregoing information, to the extent that the Court orders discovery of Request 38, PMT requests that the any information |

| | | disclosed be treated as confidential to safeguard the sensitive information contained therein.<br><br>Moreover, the underlying Complaint was filed in April 2010. This request seeks information dating back to July 2008, well prior to the six-month statute of limitation. |
| --- | --- | --- |