# EXHIBIT A

# EXHIBIT A

# NATIONAL LABOR RELATIONS

# BOARD

Case Nos.  28-CA-22747, 28-CA-22801, 28-CA-22993 & 28-CA-23022

In the Matter of:


PROFESSIONAL MEDICAL TRANSPORT, INC.,

and


PROFESSIONAL MEDICAL TRANSPORT, INC., and its alter
ego AMERICAN COMTRANS AMBULANCE SERVICE, INC.,

and

INDEPENDENT CERTIFIED EMERGENCY PROFESSIONALS
OF ARIZONA, LOCAL #1.

10 JUN 16 PI2 :13

RECEIVED PHX. AZ
NLRB - REGION 28

Pages:     1 - 134

Place:     Phoenix, Arizona

Date:      June 7, 2010

Argie Reporting Service
5900 Nieman Road, Suite 200
Shawnee, Kansas 66203
(913)422-5198

Exhibit A

1   that approach.

2       JUDGE KOCOL:  That is appropriate.  That is not a for him

3   not --

4       MR. KENNEDY:  And three, the Company is not taking the

5   position that Mr. Ramsey will be totally unavailable.  Rather,

6   I believe we have already reached agreement with -- with the

7   Counsel and the Court, that this would be the opening phase of

8   the hearing, and that there is going to be a later phase in

9   August, and Mr. Ramsey, who is the CEO, he will be certainly

10  available then.

11      JUDGE KOCOL:  When did you learn that Mr. Ramsey had been

12  served with a subpoena?

13      MR. KENNEDY:  The first that I learned of it was --

14      JUDGE KOCOL:  Or anyone in your firm.  I don't want to

15  limit --

16      MR. KENNEDY:  Well, let me speak about what I know best,

17  which is my own knowledge, and it frankly came in a

18  conversation with Ms. Lyons, I think it was last Thursday, when

19  we were -- when we were discussing documents.  I think she had

20  made a reference to questioning Mr. Ramsey and following that

21  conference, I came back and did my own investigative work in

22  order to ascertain -- if that was the case, when was he slated

23  to appear, and so basically, the short answer, Your Honor,

24  without belaboring it was I had reason to believe that he had

25  been subpoenaed on Thursday of last week, and then later

1    confirmed it the following day.

2        JUDGE KOCOL:  I see, but how soon can Mr. Ramsey be here

3    now?

4        MR. KENNEDY:  I really can't -- I really can't speak to

5    that issue.  I know certainly he is not available today, and

6    the information that was provided to me is that he would be

7    able to be here in the month of August.

8        JUDGE KOCOL:  Well, that won't do -- make contact with Mr.

9    Ramsey and see if he can be here today, have him here today,

10   but no later than first thing in the morning.

11       Your next item?

12       MS. LYONS:  Yes, Your Honor.  This is in regards to the

13   subpoena duces tecum served on both PMT and ComTrans.  We have

14   received absolutely no documents from ComTrans, and we have

15   received very few documents from PMT.

16       We can go through the list but I have -- virtually Items 1

17   through 30 of the second subpoena were not provided pursuant to

18   your order last Friday, along with many other documents.

19       JUDGE KOCOL:  Mr. Grubbs, will you be addressing this

20   issue?

21       MR. GRUBBS:  I will be addressing this issue.

22       Your Honor, on the ComTrans issue --

23       JUDGE KOCOL:  Well, let's stick with PMT first.

24       MR. GRUBBS:  Okay.  PMT/ComTrans, alter ego issue, I

25   believe the first thirty or so requests dealt with that issue.

1    We moved to revoke and that petition was denied.  In the

2    meantime, we tried to review documents to see what was the kind

3    of information that we would be willing to provide, willing to

4    have in the public domain, and what we could gather within the

5    timeframe that we had, and I have provided those few documents

6    to Ms. Lyons.

7         In addition to that, PMT believes that on the face of the

8    Complaint, the allegations can't be true, and therefore, they

9    should not be submitted to hundreds of hours of combing through

10   paper to try to respond to an over-broad request dealing with

11   an allegation that cannot be proven.  We were hoping that the

12   Board would rule on the MS -- on the Motion for Summary

13   Judgment.  They did not, but for that reason, only limited

14   documents were provided.

15        JUDGE KOCOL:  All right, when will you get the rest of the

16   documents, because I denied the Petition to Revoke, for the

17   most part -- I granted some of them, but for the most part, I

18   denied the Petition to Revoke especially on the alter ego

19   issue, so where are those documents?  How soon will they be

20   provided?

21        MR. GRUBBS:  The documents that are available and have

22   been gathered, have been provided.  There is just physically no

23   way that we can get all of the documents that they asked for,

24   and in addition, the confidential -- confidentiality concerns

25   are overriding to PMT in terms of --

1    JUDGE KOCOL:  I already addressed that, Mr. Grubbs --

2    pardon me for interrupting you -- in our off-the-record

3    conversation a few days ago, and I specifically addressed that

4    issue and directed you to identify to the General Counsel any

5    of those documents are of a proprietary nature and I directed

6    Ms. Lyons not to photocopy those or even show them to anyone

7    else outside the NLRB, without either your permission, or if

8    there is some dispute, my permission.  So, those are addressed.

9    Any proprietary information that in the sense that -- to the

10   General Counsel, that would be covered by my directive an -- if

11   there is a dispute.

12   MR. GRUBBS:  And I think PMT's response to that would be

13   that it is -- it is -- once the documents are out there,

14   whether there is a confidentiality agreement or an agreement by

15   the NLRB to not photocopy them, the information is out there in

16   the public domain and that is not -- that is not a risk that

17   they are willing to take with the amount of documents that were

18   requested.

19   I can get -- touch base with them and see if there are

20   other documents that they will be more comfortable providing,

21   but for right now --

22   JUDGE KOCOL:  Mr. Grubbs, you must comply with a -- you

23   must comply with a valid subpoena duces tecum.  I have heard no

24   argument from you so far that would absolve you from fully

25   complying with the subpoena as I modified it several days ago.

1   So, you are required to comply with that subpoena, and

2   compliance six or seven minutes ago, you are late in your

3   compliance, so I am directing you to turn over those documents,

4   all of those documents, as quickly as possible.

5        Now, my next question is how soon can you get those

6   documents?

7        MR. GRUBBS:  I haven't seen those documents or had a

8   chance to review those documents, so I have no idea how -- all

9   I know is that it is a Herculean effort to go through all of

10  these documents that are requested and determine what is

11  responsive to the subpoena and what they are comfortable with

12  providing, even under the conditions that you presented.

13       I don't have the documents.  I don't have an answer to

14  that question.

15       JUDGE KOCOL:  Mr. Grubbs, let me make something very

16  clear.

17       It is not a matter of what PMT is comfortable providing.

18  Do you understand that?  It is what they are required by law to

19  provide; not what they feel like providing, but what they must

20  provide.  I have already ruled on what documents must be

21  provided, and I am directing you to provide those documents as

22  soon as possible, okay, and if they are not turned over in a

23  timely fashion, Ms. Lyons, I will expect you to bring this to

24  my attention and to come up with some suggestions as to how to

25  deal with the failure to comply with the subpoena.

1          Now, whether we get enforcement in District Court -- you

2     know what your options are.  I don't have to tell you.

3          MS. LYONS:  Well, Your Honor, what I have been instructed

4     to do is if the Respondent is unwilling to provide the

5     documents that you have ordered them to provide, then I have

6     been instructed to ask leave to file for subpoena enforcement

7     with the Federal District Court.

8          JUDGE KOCOL:  All right, and --

9          MS. LYONS:  So, if that is -- if they are not going to

10    provide the documents then I would certainly need to put all of

11    this on the record --

12         JUDGE KOCOL:  We are on the record.

13         MS. LYONS:  I mean your rulings on them.  We would have to

14    have those rulings on the records so --

15         JUDGE KOCOL:  Is my ruling clear enough to you, Ms. Lyons,

16    to go into District Court?

17         MS. LYONS:  My understanding is that I need to actually

18    have our off-the-record ruling that occurred on Friday put on

19    the record, that I would need that for District Court.

20         JUDGE KOCOL:  All right, prepare something for my review.

21    Show it to Counsel summarizing my rulings, the other day, and

22    we will just receive that into the record.

23         MS. LYONS:  Okay.

24         And then, I would also need, you know, the Respondent to

25    say whether they were going to comply or not.  I mean, this

1    argument that it is over-burdensome doesn't, you know -- either

2    they are going to do it or they are not.

3        JUDGE KOCOL:  I have already ruled on that, so I am giving

4    you an opportunity, let's say by 9:00 tomorrow morning, to go

5    ahead and fully comply with the subpoena.  There are a few

6    documents out there that are tied in -- well, I will hear you

7    out on that, but I expect substantial compliance by 9:00

8    tomorrow morning, and we will take it a step at a time.

9        You will then prepare a summary of my ruling off-the-

10   record, show it to Counsel, and we will --

11       MR. KENNEDY:  Your Honor, with all due respect to the

12   Court, I would like to make clear that it is not simply a

13   question of whether or not the information sought would require

14   a Herculean effort.  I think that fairly a major thread in why

15   we are where we are at this moment is the concerns about the

16   Company's competitiveness and the concerns about the Company's

17   proprietary information.  This is an intensely competitive

18   market here, and by the risk to that competitive position, it

19   is one that really is very acute and very pronounced by the

20   Company, [indiscernible due to air conditioning noise] --

21       JUDGE KOCOL:  I -- you know of any case -- any Board case

22   authority that allows you to withhold relevant, proprietary

23   information under the circumstances that I have described to

24   the General Counsel, you can photocopy -- do you know of any

25   cases -- I would like to hear it, from either of you.  I know

1   of none, but I am always learning.

2        MR. KENNEDY:  I think the cases that I am aware of are

3   cases where such an argument is in advance, that usually -- I

4   am not saying this is exhaustive in terms of what avenues are

5   available, on confidentiality or review of the documents en

6   camera.  I think those are the cases that I am aware of without

7   doing any additional research.

8        JUDGE KOCOL:  But I will hear you on how we can make this

9   more, even tighter -- I haven't heard any suggestions.  This is

10  as tight as I have heard of, that it is generally speaking, the

11  General Counsel gets these documents and she keeps them.  She

12  is not going to photocopy them; if you want them back, ask, and

13  she is not going to show them to anybody outside the NLRB.  I

14  don't know what else I could do, but I am open to suggestions.

15  If I missed something, I am willing to tighten the screws on a

16  protective order or something, but you haven't said anything,

17  so if you come up with some idea in that regard -- but anyway,

18  .that is where we stand on that.

19       Please continue.

20       MS. LYONS:  Yes, Your Honor, and then we also have the

21  issue of the subpoena from ComTrans.

22       JUDGE KOCOL:  All right, Mr. Riley?

23       MR. RILEY:  Well, our concerns echo those of PMT.  We were

24  added to the litigation 38 days ago.  We asked for a

25  continuance, General Counsel fought the continuance.  We

1        MR. BARKLEY:  Okay.

2        JUDGE KOCOL:  All right, PMT, any other preliminary

3    matters?

4        MR. KENNEDY:  I think there are two that come to mind

5    quickly.  In view of the Court's ruling, not really passing on

6    the merits of the two motions, one Motion for Partial Summary

7    Judgment and a Motion to Dismiss, we would like to have the

8    opportunity to argue those two motions in Court.

9        JUDGE KOCOL:  Yes, I have read them in anticipation of

10   this.

11       The -- which would you like to take first?  Summary

12   Judgment on the alter ego issue?

13       MR. KENNEDY:  Yes.

14       JUDGE KOCOL:  All right, it does raise a few questions in

15   my mind, Ms. Lyons.

16       First of all, I read over the Complaint and as I

17   understand the allegations of the Complaint, do you know -- I

18   strictly construe Complaint allegations, I take them for what

19   they say and not what -- I will stop there, but the alter ego

20   allegations are simply that it is -- ComTrans is the disguised

21   continuance for the purpose of evading their obligations, and

22   there is no allegation that it is generally an alter ego, as

23   defined by common ownership, common labor relations, and those

24   sort of things.

25       If you will look carefully at the Complaint, that is all

1    it alleges, and the briefs are cited are [indiscernible], and

2    that -- but that is not raised by your Complaint as I read it,

3    Ms. Lyons, so here you are then, because if that is all at

4    issue, then I read in Respondent's, in PMT's brief, and in

5    ComTrans, that ComTrans was established well before any of this

6    started, in which case it is -- well, you know the consequences

7    of that, so look at the Complaint allegations and tell me why I

8    am wrong.

9        MS. LYONS:  Let me look at it, Your Honor.

10       JUDGE KOCOL:  Yes.

11       MS. LYONS:  Well, Your Honor, I would say initially in

12   Paragraph 2(g), we allege them as an alter ego, that they are

13   -- that they have substantially identical management business

14   purpose, operation, equipment customers, and supervisions, as

15   well as ownership.  So, we have alleged them as an alter ego

16   right at the beginning.

17       Now, there is evidence that shows that ComTrans has

18   existed for a long time, Your Honor, is the same as with PMT,

19   but the ownership did change, and the make-up of ComTrans has

20   changed, and we have witnesses that will testify to that, that

21   although PMT employees were working for ComTrans fifty percent

22   of the time --

23       JUDGE KOCOL:  I see.  I misread 2(g), so you are quite

24   right.  It is -- I stand corrected.  Thank you for that

25   correction.

1    But, as to the alter ego allegations, you say there are

2    factual allegations that need to be resolved at the hearing

3    here.

4    MS. LYONS:  Yes.

5    JUDGE KOCOL:  Specifically, what?  Tell me your -- start

6    out with the most important actual assertion made by Respondent

7    -- made by PMT in their Motion for Summary Judgment, that needs

8    actual resolution.

9    As you say, there are issues to litigate --

10   MS. LYONS:  Right.

11   JUDGE KOCOL:  -- I need to know what they are.

12   MS. LYONS:  Well, Your Honor, they -- it is about -- there

13   is no mention of StarWest Associates in their affidavits as far

14   as what that is.  It is a parent company that we have

15   understood that there are common individuals with StarWest that

16   cover both PMT and ComTrans for many things, including Human

17   Resources, policies, things of that nature.  None of that is in

18   their affidavit, and I believe it is in dispute, as well, Your

19   Honor.

20   JUDGE KOCOL:  Well, let me interrupt you.  Did I miss that

21   also in the Complaint?  Is there an allegation concerning

22   StarWest?

23   MS. LYONS:  There is not, Your Honor, but StarWest is the

24   parent company of both of these individuals, with common

25   individuals in charge of both of them.  Therefore, that

1    evidence that those facts need to be brought out to decide the

2    question of the alter ego.

3         JUDGE KOCOL:  All right, so let's pause at this point.

4         Your response, Mr. Kennedy, that StarWest will be the

5    bridge that combines PMT and ComTrans?

6         MR. KENNEDY:  That is certainly not the case that General

7    Counsel has pled.  In fact, indeed, StarWest is not even a

8    named party, and therefore, they are -- not even before this

9    Court, and frankly, Your Honor, let's assume for sake of

10   argument only, that StarWest is the parent.

11        If you look at Board law, a single employer, 8(b)(4) and

12   the like, under Hearst line of cases, albeit it [indiscernible

13   due to air conditioning noise] area, now, it is just axiomatic

14   that that fact, in and of itself, really means little.  You

15   need to be able to show a whole lot more than that in terms of

16   unified or common or centralized labor relations, common

17   management, integration, and the like, so even if Counsel for

18   the General Counsel can show that there is a parent, frankly, I

19   don't see where General Counsel even gains any traction from

20   that.

21        JUDGE KOCOL:  All right, back to you, okay, you have

22   raised StarWest.  Now, tell me what the connection is going to

23   be, specifically, as best as you can.  Give me a sneak preview,

24   please.  It is going to be what?

25        MS. LYONS:  I am not sure I understand the question.

1        Your Honor, StarWest was just one of the facts that would

2    be brought in -- as an offer of proof.

3        JUDGE KOCOL:  I don't --

4        MS. LYONS:  I am not sure.  You know, there are so many

5    different facts that have to be brought out in any alter ego

6    case, and somebody's affidavit attached to a motion, I mean, I

7    deserve the right to question that witness, to go over the

8    facts, especially when the affidavit is presented by someone

9    who is an officer in both organizations.

10       JUDGE KOCOL:  But the thing I am trying to get you to

11   understand, Ms. Lyons, is that I need, just like I needed a

12   sneak preview of the -- of PMT's defense, I need a sneak

13   preview of your case here concerning what -- not that you hope

14   you are going to uncover something that will show this, that,

15   or the other, but what is the factual issue that needs to be

16   litigated here on the alter ego issue, under Fugazy, that you

17   have difficulty with, and I want your strongest issue, and not

18   that they have the same telephone company or something, but

19   what is it -- what is it that Mr. Ramsey calls the shots here

20   in personnel, or that -- you tell me.  I haven't heard it yet.

21       MS. LYONS:  Well, Your Honor, the strongest evidence is

22   going to come through employees who are PMT employees, who are

23   being dispatched to do ComTrans work, have been told to change

24   their call sign to ComTrans, even though they are in a PMT

25   vehicle, who have changed their paperwork to put ComTrans down,

1    even though they are a PMT employee and are paid by PMT, some

2    of them up to fifty percent of the time.  Additionally, there

3    is evidence of vehicles that are used by PMT employees that say

4    ComTrans on them, that they use the same mechanics, that they

5    use the same --

6       JUDGE KOCOL:  Well, that is a factual issue that is

7    contrary to what was asserted in the affidavit, but come back

8    to the -- you are saying that you have evidence that may show

9    that PMT employees also work for ComTrans.

10      MS. LYONS:  Yes, sir.

11      JUDGE KOCOL:  All right, okay.

12      MS. LYONS:  And then the main issue that causes the

13   General Counsel concern is that this whole issue of the off-

14   duty firefighters moonlighting.  After your decision, we will

15   be able to show that those firefighters are, as well, being

16   transferred over to the ComTrans vehicles to work with

17   bargaining unit members and taking away bargaining unit

18   members' positions.  That is from one of the -- from a

19   conversation with the President and CEO, out of his own mouth,

20   which we will need him to testify to.

21      JUDGE KOCOL:  It sounds to me like that is more of a joint

22   employer issue you are raising and not an alter ego.  Am I

23   missing something there?

24      MS. LYONS:  I don't think so, Your Honor.  I think it is a

25   joint -- I mean, I think it is an alter ego issue.

1       In order to pretend that they were not hiring

2    firefighters, they put them into just another ambulance with a

3    different name on it.

4       JUDGE KOCOL:  All right, I think Ms. Lyons has convinced

5    me that there is enough here that I can grant the Motion for

6    Summary Judgment on that issue, but that will still have to go

7    to trial.

8       Let's go to the Motion to Dismiss, for Partial Dismissal,

9    and that goes with the City of Peoria?

10      MR. KENNEDY:  Yes, it does, Your Honor.

11      I think -- I

12      JUDGE KOCOL:  I will hear you on that.  Again, as I

13   understand -- let me check the allegations again.

14      What paragraph is that, again?

15      I see, it is (n), Paragraph 8(n).

16   (Long pause.)

17      JUDGE KOCOL:  How would the bid require PMT to transfer

18   work to non-unit employees?

19      MS. LYONS:  Your Honor, the bid that was presented and the

20   contract that was granted has what is called an integrated

21   staffing model, where within twelve to eighteen months, twelve

22   of the bargaining unit positions would be replaced by the City

23   of Peoria firefighters.

24      JUDGE KOCOL:  All right, now, let's break that down.

25      Do you have case authority -- are you contending that PMT

1    was required to bargain over the decision to lay-off, to bid

2    and lay-off, or simply over the effects of the lay-off on unit

3    employees?

4        MS. LYONS:  Well, I think, Your Honor, that they would be

5    required to do both.  I mean, this is -- this is an issue that

6    this company is well aware of, that the Union wants to bargain

7    over, that is this problem with replacing bargaining unit

8    members with firefighters.  They had months and months where

9    they were preparing these bids and attempting to gain this

10   contract in the city of Peoria, and not one time did they

11   bargain with the Union, notify the Union that they were going

12   to be trying to get rid of positions, and then as well as

13   bargain over the effects which haven't really occurred yet, so

14   the --

15       JUDGE KOCOL:  So, it is your position that PMT had the

16   flexibility in negotiating a contract with the City of Peoria,

17   that could have prevented the lay-off of the fifteen, did you

18   say, fifteen employees?

19       MS. LYONS:  I believe it is twelve, Your Honor.

20       JUDGE KOCOL:  Okay, twelve, all right.

21       MS. LYONS:  I believe that that is something that they

22   could have had flexibility with.  There were contract

23   negotiations and changes to the bid that was presented to

24   Peoria over several months.

25       JUDGE KOCOL:  All right, Mr. Kennedy --

1      MS. LYONS:  And the --

2      JUDGE KOCOL:  I'm sorry.

3      MS. LYONS:  And the Union could have agreed, you know, to

4  certain aspects of it or when it was going to take place or

5  things of that nature, if they had just been told about it, and

6  they --

7      MR. KENNEDY:  I have two -- I have two responses, Your

8  Honor.

9      I think, first, the General Counsel's case appears to be

10  built upon conjecture and guesswork and speculation as to what

11  may occur with the Peoria contract in the future, and the --

12  and the case cited in our -- our paper states the Board does

13  not decide cases in pure theoretical terms where constraints

14  [indiscernible] conclude cases -- not right for decision.

15  There is this [indiscernible] question.  I think that is the

16  very case here.

17      What may or may not happen in the future very much remains

18  to be seen, but on the more substantive points, the theory that

19  is propounded here would really require at least the erosion,

20  if not the overturning, of Fiberboard.

21      First National Maintenance, and Pittsburgh Plate Glass,

22  then we start going into the way that an employer can seek bids

23  for its work.  You are going into the kind of topic that I

24  think Justice Stewart talked about, the company's decision as

25  to what product to make, what its financial arrangements may

1    be, what its advertising may be.  I do not think that this is a

2    mandatory subject of bargaining under current Board law, and

3    therefore the Company certainly didn't commit any violation of

4    the Act in not involving the Union in the formulation of its

5    bid to the City of Peoria.

6        JUDGE KOCOL:  I agree with you to a certain point, but the

7    General Counsel is asserting that this is not a case such as

8    First National Maintenance, where the company really had no

9    choice in the matter.  General Counsel is saying she is going

10   to prove that you could have, in your negotiation with the City

11   of Peoria, said that, "We don't want to take your twelve

12   employees; we want our employees."  That is what --

13       MR. KENNEDY:  Frankly, I couldn't comment.  I would find

14   it rather surprising that a vendor could dictate to a

15   municipality what the terms of the contract would be.  I am

16   sure it is a dynamic and bilateral process, and I would be very

17   surprised to hear that the scenario unfolded by the General

18   Counsel was, in fact, what transpired, but once again, even if

19   it is true, in this case, even right, in other words, where are

20   the tangible consequences for this and it sounds like something

21   that may or may not have occurred.  It is going to be in the

22   hands of the City of Peoria to choose how they intend to go

23   forward.

24       JUDGE KOCOL:  But, Mr. Kennedy, do you dispute that the

25   contract currently calls for the lay-off of the twelve unit

1    employees?

2         MR. KENNEDY:  I think that -- yes, I believe that at best,

3    and -- yeah, I think my colleague just confirmed it, is that

4    that is an option that may or may not take place.

5         JUDGE KOCOL:  All right, then back to you, Ms. Lyons.

6    What is it -- and this is actually the question I started out

7    asking you, help show me specifically where in that contract or

8    that bid, read it to me, if you don't mind, where it says

9    twelve employees must be laid off.

10        MS. LYONS:  Well, Your Honor, we have asked for that bid.

11   We have not received it.  That is one of the documents you

12   asked them to turn over.

13        I do have City of Peoria Council Communication Letter, a

14   public document, and if you will hold on just a minute, I will

15   find it.  It is called a "Joint Integrated Staffing."  It says

16   that the -- "The ambulance company would provide or subsidize

17   the costs related to the training of twelve new paramedics,

18   four full-time ambulances would be staffed with one city-

19   employed paramedic and one ambulance-employed EMT-Basic."

20        Then, it just goes on and talks about "The ambulance

21   company would reimburse the City the salary and the benefit

22   costs of the twelve City-employed paramedics."

23        JUDGE KOCOL:  All right, I am staying with you, but did I

24   misunderstand, but does that simply mean that twelve of the

25   employees to be added to the unit will come from the City of

1   Peoria?

2       MS. LYONS:  Yes, as I understand it, there is going to be

3   a certain number of dedicated ambulances that have two

4   personnel on it.  For the first twelve to eighteen months,

5   those two personnel will be bargaining unit employees employed

6   by PMT.  After that, they will integrate to where there is one

7   PMT employee and one City employee.

8       JUDGE KOCOL:  And that is going to happen eighteen months

9   from now?

10      MS. LYONS:  Twelve to eighteen months from now.

11      MR. BARKLEY:  Twelve months to make the decision, eighteen

12  months to make the deployment.

13      JUDGE KOCOL:  And once those employees are -- those City

14  of Peoria employees are hired, then are they unit employees or

15  not?

16      MS. LYONS:  No, Your Honor, they are City of Peoria

17  firefighters.

18      MR. BARKLEY:  AFF.

19      JUDGE KOCOL:  How do you conclude that?

20      MS. LYONS:  Because they say that, Your Honor.  It says

21  "City" --

22      JUDGE KOCOL:  They would remain employees of the City of

23  Peoria?

24      MS. LYONS:  Yes, that is correct.  "Twelve City-employed

25  paramedics."

1      JUDGE KOCOL:  All right, we are back to you then, Mr.

2   Kennedy.  It appears that there is some certainty to this that

3   some City of Peoria employees will be replacing unit employees,

4   if I understood that correctly, down the road, twelve or

5   eighteen months.  Correct me in my understanding.

6      MR. KENNEDY:  I think I go back to my issue point, Your

7   Honor, which is, isn't this all just sheer speculation.

8   Parties frequently amend agreements; what ramifications of an

9   agreement may be, or remain very much to be seen.

10      We are anticipating a problem that as of June the 7th,

11   doesn't exist.

12      JUDGE KOCOL:  Now, is this -- we are going to stay with

13   this a bit more.

14      Ms. Lyons, is this a certainty, or is this still an

15   option?

16      MS. LYONS:  The joint integrated plan -- I will let Mr.

17   Barkley speak to that, because he has had the discussion with

18   Mr. Ramsey.

19      MR. BARKLEY:  What I understand is that they will be

20   discussing it twelve months into the contract and deciding at

21   that time what is economically feasible to do and how many of

22   us will get laid off and how many City employees will be put

23   on.

24      JUDGE KOCOL:  This does sound speculative, but I am going

25   to require you to do this, Mr. Kennedy.

1      I want PMT to turn over the document covered by this item,

2  and then renew your Motion to Dismiss.  Once you have those, if

3  it is as speculative as it sounds now, I am inclined to grant

4  this, because it is not a certainty, the way Mr. Barkley has

5  been describing it.  It may come to pass, but it may not come

6  to pass, and if there is this amount of uncertainty there, then

7  it may not be right, and so far, I have been persuaded by PMT's

8  argument here, but I will allow you to get the documents you

9  subpoenaed to double-check that, and then once those are turned

10  over, Mr. Kennedy, renew your motion if you think that is

11  appropriate, and I will deal with it then.

12      MR. KENNEDY:  Thank you, Your Honor.

13      JUDGE KOCOL:  All right, anything else from PMT?

14      MR. KENNEDY:  No.

15      JUDGE KOCOL:  Okay, is there anything from ComTrans, Mr.

16  Riley?

17      MR. RILEY:  Your Honor, ComTrans would like to be heard on

18  this Motion for Summary Judgment also.  We raised additional

19  issues that we would like to be heard on.

20      JUDGE KOCOL:  Remind me, what additional issues did you

21  raise?

22      MR. RILEY:  We also raised, first of all, that there was

23  no purpose to avoid the Act which is one of the elements that

24  has to be shown, and that additionally, no union work has been

25  transferred to ComTrans, and that the Union has effectively

1   acquiesced to the -- to the existence of ComTrans, because its

2   existence predates that of PMT.  Then, if I could go into the

3   specifics of those issues.

4          Under the alter ego test, you have to show -- it is a

5   balancing test and General Counsel has the burden to prove that

6   there is a substantial similarity in management, property,

7   equipment, operations, customers, supervision, ownership, and

8   labor relations.  They don't have to show each of those

9   elements.  It is, you know, effectively a balancing test, but

10   if those elements are shown, you then proceed to the second

11   prong of the test which is whether the alter ego company was

12   formed for the purpose of evading any obligations under the

13   Collective Bargaining Agreement, or under the National Labor

14   Relations Act, and as we show in our motion, it is impossible

15   to argue that ComTrans is formed for the purpose of evading

16   PMT's obligations, because ComTrans predates PMT, and has been

17   operated in substantially the same manner as it has been since

18   Day One.

19          So, the argument that it is somehow being used to evade

20   PMT's responsibilities just doesn't make sense on a

21   chronological scale.

22          JUDGE KOCOL:  All right.  Now, let me stop you right

23   there.

24          Let's go back to you, Ms. Lyons.

25          What about the argument?  Persuade me that the original

1    allegation of general alter ego status, but what about the

2    allegations that ComTrans was established for the purpose of

3    evading its responsibility, and for the purpose of -- what was

4    the other allegation?

5        MS. LYONS:  The transfer of the unit work.

6        JUDGE KOCOL:  Okay, transfer of the unit work.

7        MS. LYONS:  Well, there is -- there is going to be

8    evidence -- I mean this is a factual issue, Your Honor.  There

9    is -- as Mr. Riley has pointed out, all of the different

10   elements that have to be discussed, and those facts --

11       JUDGE KOCOL:  No, no, I understand.  Put aside the Fugazy.

12   You can establish alter ego in two words, Fugazy, common

13   ownership --

14       MS. LYONS:  Yes, Your Honor.

15       JUDGE KOCOL:  And for the purpose -- the second is for the

16   purpose of evading -- some unlawful purpose.

17       MS. LYONS:  Right.

18       JUDGE KOCOL:  And, Ms. Lyons, you are saying that ComTrans

19   couldn't have been established for unlawful purpose, because

20   ComTrans existed before there as any reason for any unlawful

21   purpose.

22       MS. LYONS:  Well, Your Honor, the facts that we have that

23   will show that ComTrans was basically inactive for quite

24   sometime.  Although it existed, it was owned by Mr. Ramsey, it

25   was inactive.  It was brought back, new vehicles were prepared

1    with the logo put on them, and unit employees were put on those

2    vehicles, and this all occurred after the November 2009

3    decision.

4         JUDGE KOCOL:  All right, she has a point there.

5         MR. RILEY:  Your Honor, Ms. Lyons is confusing ComTrans

6    with American Ambulette, which is another affiliate.  ComTrans

7    has four ambulances and has operated a similar number of

8    ambulances since it was started, so, no, that is not correct.

9    It was owned for a period of years.

10        JUDGE KOCOL:  Are you confused --

11        MS. LYONS:  I am not confused, Your Honor.

12        JUDGE KOCOL:  Well, that raises a factual issue that -- I

13   am going to have to sort that out, I guess.

14        Continue, Mr. Riley.

15        MR. RILEY:  The next issue is whether any union work has

16   actually been transferred to ComTrans.  The Complaint itself is

17   very general and doesn't include any specifics about what has

18   happened.  All it has is a general proclamation that union work

19   has been transferred to ComTrans.

20        Generally, when you have cases where union work is

21   transferred from one entity to another, the Supreme Court in

22   the Howard Johnson case cautioned that it is very common in the

23   modern age for a single parent company, or a single owner, to

24   operate multiple business entities, some of which are unionized

25   and some of which are not, and in cases where you have union

1    work being transferred from one entity to another, and is found

2    to violate the Act, it is generally a forcible transfer,

3    usually through a termination and rehire scheme, and we cited

4    some cases involving that in our motion which the union

5    companies effectively wound down.   Its employees are terminated

6    and then they are rehired at the non-union company to evade

7    having to pay benefits, or having to do other things under the

8    Act.   That is not what is happening here.

9        What happens here is ComTrans only operates four

10   ambulances and it would not be cost-effective to have its own

11   full-time employees, so it accepts contract labor from a number

12   of companies, one of which is PMT and PMT is essentially a temp

13   service -- almost a temp service providing employees to

14   ComTrans, and that is the way ComTrans has been doing business

15   since Day One.

16       JUDGE KOCOL:   And the facts as asserted by ComTrans would

17   not show any transfer of unit, but it would show rather that

18   ComTrans is just giving them additional work opportunities to

19   unit employees at PMT.

20       MS. LYONS:   Your Honor, they are giving additional work

21   opportunities to part-time firefighters.   I mean, those part-

22   time firefighters that are employed by PMT, are now being moved

23   to ComTrans, along with a unit nurse, so that those firefighter

24   positions are bargaining unit work.   That would be our

25   argument.

1        JUDGE KOCOL:  Okay, by virtue of the prior case.

2        MS. LYONS:  Yes.

3        JUDGE KOCOL:  I see.

4        MS. LYONS:  As well as what PMT did after the decision is

5    that they started doing this after the decision and telling the

6    firefighters that, "Oh, it is okay.  The Union only represents

7    employees that are on the 9-1-1 rigs.  It is okay to work in

8    these rigs."  Then, they put ComTrans and ProMed Transport

9    stickers on these vehicles; ProMed Transport being a trade name

10   of ComTrans.

11       JUDGE KOCOL:  Back to you, Mr. Riley, this raises a

12   factual issue.

13       MR. RILEY:  This segways into our last point.

14       ComTrans, since they have been in existence since before

15   PMT, the Union was certainly aware of its presence when it

16   entered into collective bargaining negotiations with PMT.  Had

17   it wanted to include ComTrans in its Collective Bargaining

18   Agreement, it certainly could have done so.  It could have

19   asked that the Collective Bargaining Agreement apply

20   [indiscernible] shifts at ComTrans and it didn't.  That is the

21   very essence of the acquiescence doctrine.

22       The Supreme Court has said that a union cannot compel

23   unionization of a non-union entity, because it didn't bargain

24   at arm's length to have that entity unionized, and had it

25   bargained at arm's length and requested that that entity be

1    unionized, then they might -- they may have had different

2    discussions, they may have had different agreements.  The Union

3    cannot come back afterwards and attempt to boot-strap its

4    Collective Bargaining Agreement to compel unionization of this

5    non-union entity.

6         The Union has acquiesced to the way the company is being

7    operated, because they had every opportunity to ask that it be

8    rolled into the Collective Bargaining Agreement, and they

9    simply did not do so.

10        JUDGE KOCOL:  As a matter of law, isn't Mr. Riley correct

11   in his statement of what the law is?

12        MS. LYONS:  I would say probably, Your Honor, but that is

13   not the facts as he is presenting them.

14        MR. BARKLEY:  Could I interject some fact?

15        JUDGE KOCOL:  Let me -- I will stick with Ms. Lyons first,

16   and if she doesn't say what you want to say, I will come back

17   to you.

18        MR. BARKLEY:  Okay.

19        MS. LYONS:  When the Union asked for recognition and was

20   granted, ComTrans was acting under C-O-N that only did

21   behavioral-type transports.  They were not acting as a

22   certificate of need or necessity.  They have changed the way

23   they are acting, Your Honor, since November 2009.  They are not

24   doing just the behavioral aspects as their Certificate of

25   Necessity states.  They are also doing --

1    JUDGE KOCOL:  Give me a specific as to how they are not, a

2    specific instance.

3    MS. LYONS:  Well, they are on ambulances now, Your Honor,

4    instead of before, they were on these ambulettes that transfer

5    behavioral-type patients, and --

6    JUDGE KOCOL:  Again, it appears to raise a factual issue,

7    does it not, Mr. Riley?

8    MR. RILEY:  Your Honor, part of the problem that I am

9    facing here is that generally when you file a Motion for

10   Summary Judgment, the responding party has to respond with

11   admissible evidence, not avowals by Counsel, and there have

12   been a number of avowals that simply are not correct, do not

13   conform to the facts, and frankly, if the Company were

14   operating the way that Ms. Lyons says, they would be operating

15   in violation of DHS law.  The Company does not operate in the

16   way that Ms. Lyons is claiming, and she has an obligation in

17   responding to a Motion for Summary Judgment, to provide

18   evidence to support her position and now just avowals to the

19   Court.

20   JUDGE KOCOL:  But if what you say is proper, Mr. Riley, if

21   at the end of the day Ms. Lyons says that -- keeps up the

22   representations or adheres to the representations that she has

23   made to the Court, and I assume she will.  Everybody is an

24   officer of the Court and I assume they will not make

25   representations without something to back them up, but if it

1    gets to that point, you remind me of this and we will see where

2    we are at.  If at the end of the day we have gone through a

3    long trial and there is nothing there to back up these

4    representations, then bring that to my attention and you will

5    be making suggestions as to how to deal with that, strike the

6    evidence from the record, or whatever.

7         So, if that is the case, we will deal with it that way,

8    but based on representations of Counsel, what specific factual

9    evidence will show, I think this raises a validical issue and I

10   will have to sort this out through the testimony.

11        Anything else from you -- oh, Mr. Barkley, did you want to

12   raise anything?

13        MR. BARKLEY:  Based on these last three comments, no, Your

14   Honor.

15        JUDGE KOCOL:  Okay, we are back to you, Mr. Riley.

16        MR. RILEY:  The only other issue I want to raise, Your

17   Honor, to briefly go back to the subpoena issue, co-counsel

18   raised a concern about proprietary information.  I did want to

19   point out to Your Honor that there are representatives from

20   Southwest in the audience, so these aren't just hypothetical

21   concerns.  These are legitimate concerns.

22        JUDGE KOCOL:  Southwest being a competitor?

23        MR. RILEY:  A competitor of ComTrans.

24        MR. KENNEDY:  A principal competitor.

25        JUDGE KOCOL:  Well, again, if you have any other

1  suggestions as to how I can more tightly enforce the protective

2  order, I am open to that.  Certainly the General Counsel -- I

3  have instructed the General Counsel several times not to show

4  those documents to anyone other than who works with the

5  National Labor Relations Board, not to photocopy them without

6  permission, so if you see any Southwest or anyone else even in

7  the area of the General Counsel, well, you know, let me know

8  and we will deal with that or put it in a file, put them in a

9  sealed file so that the General Counsel could look at them only

10  in her office, then I am open to those ideas.

11       MR. RILEY:  Well, another concern we have with going

12  forward with the hearing, Your Honor, is testimony that

13  involves trade secrets, if this is going to be an open

14  courtroom with public participants from the Company's

15  competitors.

16       JUDGE KOCOL:  Well, that we will have to deal with when we

17  get there.  That is a very, very, very tough issue.  It is open

18  proceedings, but if we get to that point, we will have to

19  construct a way that allows this to be a public hearing to the

20  extent possible, but does not allow very sensitive proprietary

21  information to get out, and -- well, we will deal with that.  I

22  am confident you will have some suggestions and we will work

23  something out.

24       MR. RILEY:  Your Honor, ComTrans has no further --

25       MR. KENNEDY:  I would just like to reinforce some comments

1    of Counsel.

2        We completely and wholeheartedly endorse them, but the

3    competitive risks here are so great and so steep that we would

4    be very much in favor of the courtroom being closed during any

5    testimony having to do with the kind of proprietary, sensitive,

6    confidential information that we are talking about.

7        JUDGE KOCOL:  I can only do it once a specific document is

8    identified, so I can get a sense as to what it is.  So, if we

9    get to that point, where you are requesting some additional

10   measures, ComTrans or PMT, if something is going to be coming

11   out, either by question from the Union or the General Counsel,

12   or by a document that may be offered into evidence, make your

13   objection and we will construct some way that deals with that

14   situation.

15       MR. KENNEDY:  Your Honor, one other point.  You may have

16   already passed on this -- you may have already decided, but I

17   just want to say frankly, that I think the Court's comment

18   earlier was right on, and that is that I think the General

19   Counsel's theory here is misconceived.  There may be, and I

20   emphasize maybe, a possible joint employer/single employer

21   argument, but there is certainly no alter ego in any kind of

22   traditional NLRB sense.

23       This isn't like a successorship case where, to use the

24   expression, there is disguised continuance.  There is no

25   disguised continuance in any of these entities, so I just pass