**LAW OFFICES**
**SHERMAN & HOWARD L.L.C.**
2800 NORTH CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004-1043
TELEPHONE: (602) 240-3000
FAX: (602) 240-6600
(AZ BAR FIRM NO. 00441000)

Arthur W. Pederson (AZ Bar No. 002821)
(APederson@ShermanHoward.com)
Thomas J. Kennedy (AZ Bar No. 006907)
(TKennedy@ShermanHoward.com)
Michael C. Grubbs (AZ Bar No. 024032)
(MGrubbs@ShermanHoward.com)
Attorneys for Respondents Professional Medical Transport, Inc., and Bob Ramsey

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Labor Relations Board,<br><br>Applicant,<br><br>v.<br><br>Professional Medical Transport, Inc.,<br><br>and<br><br>Professional Medical Transport, Inc. and its alter ego American Comtrans Ambulance Service, Inc.<br><br>and<br><br>Bob Ramsey, an individual,<br><br>Respondents. | Case No. MC10-0061-PHX-DGC<br><br>**RESPONDENTS' SUR-REPLY IN OPPOSITION TO NLRB'S APPLICATION FOR ORDER TO ENFORCE ADMINISTRATIVE SUBPOENAS** |

Pursuant to the Court's July 22, 2009 Order (Dkt. #17), Respondents Professional Medical Transport, Inc. ("PMT") and Bob Ramsey submit their Sur-Reply in Opposition to the NLRB's application for subpoena enforcement.

**I.   In This Subpoena Enforcement Matter, The Court Owes No Deference to the ALJ.**

Congress entrusted Article III judges with the exclusive authority to decide whether documents are required to be produced to the National Labor Relations Board ("NLRB") in response to an administrative subpoena. This statutory authority is not subject to any requirement of deference to the administrative law judge's ("ALJ")

831109.1 \ 087465.002 (08/27/10)

findings in the underlying unfair labor practice proceeding.

Section 11 of the National Labor Relations Act, 29 U.S.C. § 161(2) ("Act") states:

> In case of contumacy or refusal to obey a subpoena issued to any person, any district court of the United States . . . upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question.

29 U.S.C. § 161(2).

In *Interstate Commerce Comm'n v. Brimson,* 154 U.S. 447 (1894), *overruled* on other grounds by *Bloom v. Illinois,* 391 U.S. 194 (1968), the Supreme Court specifically held that the court's duty to decide whether subpoenaed evidence be turned over to a federal agency *cannot* be delegated to an administrative tribunal:

> The inquiry whether a witness before [an agency] is bound to answer a particular question propounded to him, or to produce books, papers, etc. in his possession and called for by that body, is one that *cannot be committed to a subordinate administrative or executive tribunal for final determination.*

*Interstate Commerce,* 154 U.S. at 485 (emphasis added).

The Ninth Circuit relied on the foregoing language, stating that it "makes clear that challenges to [NLRB] subpoenas must be resolved by the judiciary before compliance can be compelled." *NLRB v. Int'l Medication Systems, Ltd.,* 640 F.2d 1110, 1115-16 (9th Cir. 1981). "Congress granted the district courts exclusive authority to compel compliance with NLRB subpoenas." *Id.*

The Sixth Circuit, in *NLRB v. Detroit Newspapers,* 185 F.3d 602, 605 (6th Cir. 1999),[1] relied on *Int'l Medication Systems* in rejecting the NLRB's argument that the ALJ in the underlying unfair labor practice case was responsible for subpoena issues and document disputes. *See also, EEOC v. U.S. Fid. & Guar. Co.*, 414 F. Supp. 227,

---

[1] Because the *Detroit Newspapers* court found the Ninth Circuit's reasoning persuasive, Respondent includes this citation, while acknowledging the Court's admonition to limit citations to Ninth Circuit cases only if possible.

232 (D. Md. 1976) ("A subpoena enforcement proceeding is a *de novo* proceeding before this Court," *aff'd,* 538 F.2d 324 (4th Cir. 1976)).

Thus, although administrative agencies may regularly issue subpoenas for relevant information:

> Congress has never attempted, however, to confer upon an administrative agency itself the power to compel obedience to such a subpoena ... That Congress should so consistently have withheld powers of testimonial compulsion from administrative agencies discloses a policy that speaks with impressive significance. Instead of authorizing agencies to enforce their subpoenas, Congress has required them to resort to the courts for enforcement.

*Penfield Co. of California v. SEC,* 330 U.S. 585, 603-604, 67 S.Ct. 918, 91 L.Ed. 1117 (1947).

Additionally, any decision from the administrative law judge is an intermediate decision, subject to reversal or modification by the NLRB. It is the five-member NLRB in Washington, D.C., the agency to which a party appeals from an adverse decision of the administrative law judge, which is entitled to judicial deference when it interprets an ambiguous provision of the statute that it administers. *See e.g., Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992). Thus, there is no deference either to the administrative law judge or to this regional office, which is essentially reflecting and discharging the powers of the General Counsel of the NLRB.

This Court does not owe deference to the ALJ's findings regarding the subpoena. Rather, the Court has exclusive authority over this subpoena enforcement matter and has the authority and responsibility to review the issues *de novo*.

II. **The ALJ's Proposals Regarding The Documents Were Insufficient To Protect PMT's Interests.**

The ALJ's proposed protections also failed to sufficiently protect PMT's interests. Specifically, the ALJ demanded that PMT gather all the disputed documents, produce a privilege log referencing each specific disputed document, and then review those documents individually at the hearing. (*See* Dkt. #28-2 at 153.) While the ALJ's proposal offered protections regarding PMT's privacy and confidentiality concerns, the

ALJ's proposal did not address PMT's contentions concerning relevance, overbreadth, or burdensomeness. The sheer volume of documents subpoenaed made compliance with the ALJ's proposal impossible. (Dkt. #28-1 at 10:21-24.)

The NLRB's subpoena seeks information that can only be found in PMT's patient transport invoices. In order to comply with the ALJ's proposed strategy for reviewing and protective documents, PMT would still have to review the patient invoices ("Invoices") from January 2009 to May 10, 2010. During this period covered by the subpoena, there were approximately 90,000 transports. Each of the Invoices generates approximately 10 pages of printed material. Thus, PMT estimates that approximately 900,000 pages of Invoices exist for the relevant period. (*See* Dkt. #24 at ¶¶ 43-46.) These Invoices cannot simply be handed over to the NLRB.

Rather, the Invoices contain information that is protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936, 42 U.S.C. § 1320 *et. seq.* PMT is prohibited by HIPAA from disclosure of the Invoices because they contain "individually identifiable health information." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1089 (9th Cir.2007) (citing 45 C.F.R. § 160.202).

HIPAA protects: information that relates to the individual's past, present, or future physical or mental health or condition; information that relates to the provision of health care to the individual; information that relates to the payment for the provision of health care to the individual; and information that identifies the individual or for which there is a reasonable basis to believe can be used to identify the individual. *See, e.g., Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1089 (9th Cir. 2007) (an individual's "privacy is a primary HIPAA goal"); *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality").

To comply with the respective patients' right to privacy, each of the 900,000

pages must be reviewed and redacted to delete the individually identifiable health information. PMT estimates that it would take approximately 22,500 work-hours to gather, print, review, and redact the requested documents. (*See* Supplemental Declaration of Jim Roeder, filed August 9, 2010, at ¶ 46.) Accordingly, PMT could not have possibly complied with the ALJ's proposal in the NLRB's limited time frame and neither the ALJ, nor the NLRB, has addressed PMT's federal HIPAA requirements and obligations.

### III. The NLRB's Requests are Overbroad, Unduly Burdensome, and Seek Confidential and Irrelevant Information.

The Court must also review the subpoena to determine whether the subpoena duces tecum[2] (1) seeks material that is relevant to the underlying administrative proceeding; (2) is unreasonably overbroad or unduly burdensome; or (3) seeks information that is confidential in nature and subject to protection. *See, e.g., NLRB v. North Bay Plumbing, Inc.,* 102 F.3d 1005, 1007-1008 (9th Cir. 1996); *EEOC v. American Apparel, Inc.*, 327 Fed. Appx. 11, 12 (9th Cir. 2009)[3] (recognizing that an administrative agency's subpoena powers "are subject to recognized privileges and protections"). The Court may refuse to enforce the subpoena, in whole or in part, where these factors are not satisfied. *North Bay,* 102 F.3d at 1007.

Although the NLRB subpoena contained 50 separate requests for documents, with various subparts, the only specific requests from the subpoena duces tecum that are still in dispute are Requests 2, 6, 8, 10-12, 14-15, 18-19, 24, 27, 33, and 38-39.[4] (*See* Dkt. #26 at 1-2.) These disputed requests seek documents that are irrelevant,

---

[2] The issue regarding the subpoena to testify to Mr. Ramsey has been fully briefed previously and this brief will focus on the subpoena duces tecum issue. However, PMT reiterates that the original subpoena to testify was not properly served at Mr. Ramsey's principal place of business. Additionally, at the very least, the subpoena and subsequent letter from counsel for the NLRB should have been copied/mailed to Mr. Ramsey's counsel, as required in its manual, under Ariz. Rule of Prof'l Conduct R. 4.2. and common courtesy existing in Arizona for the last 35 years.

[3] A copy of *EEOC v. American Apparel, Inc.*, 327 Fed. Appx. 11 (9th Cir. 2009) has previously been provided to the Court. (Dkt. #25-1 at 2.)

[4] This 50-category subpoena was in addition to a prior 23-category subpoena with which PMT fully complied. (*See* Dkt. #13-1 at 19, ¶ 15.)

confidential, or subject PMT to an undue burden.  PMT will address each specific request below.  PMT notes that the Court has set a hearing for September 9, 2010 regarding the document requests and PMT reserves its right to proffer additional testimony and documentary evidence at that hearing in support of PMT's contentions.

        **A.      Requests 2, 6, 8, 10-11, 14, 19, 24, 27, 33, and 38-39 seek information with little or no relevance and are unduly burdensome.**

A subpoena is unduly burdensome when compliance with the subpoena would seriously disrupt the respondent's business operations.  *EEOC v. Aaron Bros., Inc.*, 620 F.Supp.2d 1102, 1106 (C.D. Cal. 2009).  Similarly, a subpoena is unduly burdensome if the expense of complying with the subpoena would be unfair, in light of the respondent's normal operating costs.  *Id.*

The information sought in Requests 8, 11, 14, and 27 is unduly burdensome.  Specifically, the information is only found in the Invoices.  To produce such information to the NLRB would require individualized review of the approximate 900,000 pages of Invoices.  As described above, gathering, printing, reviewing, and redacting these documents would be an enormous undertaking.  Specifically, PMT estimates that it would require approximately 22,500 work-hours of review.  (*See* Dkt. #24 at ¶ 45.)

A total of 22,500 work-hours equates to approximately 10 full-time employees working for an entire year.  (*See* Second Supplemental Declaration of Jim Roeder, **Ex. A** hereto at ¶ 50.)  Such a requirement would cause an interruption to any business, including a large corporation.  PMT is not sufficiently staffed to pull 10 full-time employees and have them work on the documents for a year.  (*Id.* at ¶ 51.)  PMT has approximately 300 full-time employees, the majority of whom are emergency medical providers, not office personnel.  (*Id.* at ¶ 52.)  In fact, only three PMT employees would be considered full time administrative personnel.  (*Id.*)  Accordingly, PMT would have to hire and train additional employees simply to respond to the NLRB's request.  (*Id.* at ¶ 53.)  Such an undertaking would significantly disrupt PMT's normal business

1  operations, which could ultimately affect patient care.  (*Id.* at ¶ 54.)  Thus, the subpoena
2  requests dealing with the Invoices should not be enforced.

3        One of the decisions cited by the NLRB in its Reply Brief, *EEOC v. United
4  Airlines*, 287 F.3d 643 (7th Cir. 2002), supports PMT's arguments.  In *United Airlines,*
5  the Seventh Circuit declared:  "If the personnel or financial burden on the employer is
6  great compared to the resources the employer has at its disposal, the district court
7  should attempt to alleviate this burden."  *Id.* at 653-54.  Concluding its analysis, the
8  Seventh Circuit declared:  "Even if we were to find that all of the information required
9  by the subpoena was relevant to the charge in some tangential way, we would have to
10 conclude that the voluminous request of the EEOC is overly burdensome.  The financial
11 and administrative demand placed on UAL is significant and, in light of the tangential
12 need for the information, an undue burden on UAL."  *Id.* at 654.  As in *United Airlines,*
13 the financial and administrative strain placed on PMT is significant.  Further, the need
14 for the Invoices is tangential, at best. The NLRB can obtain the requested information
15 through other, less burdensome means.  Specifically, the NLRB can obtain testimony
16 from PMT, ComTrans, and union representatives regarding the "alter ego" allegation.
17 Instead, the NLRB attempts to use the nearly unlimited resources available to a federal
18 agency to force PMT into submission to its unreasonable demands.

19       In making the determination of whether a subpoena is unduly burdensome, the
20 court must also "weigh the likely relevance of the requested material to the investigation
21 against the burden to [the respondent] producing the material."  *EEOC v. South
22 Carolina National Bank*, 562 F.2d 329, 332 (4th Cir. 1977).  Additionally, a court
23 should refuse to enforce a subpoena that seeks irrelevant information.  *North Bay
24 Plumbing, Inc.*, 102 F.3d at 1007-08.  Requests 2, 6, 10, 19, 24, 33, and 38-39 seek
25 information with little or no relevance.

26       Requests 2, 6, 10, 19, and 24 purportedly seek information regarding the NLRB's
27 "alter ego" allegation.  (*See* Dkt. #26-1.)  In regards to an alter ego allegation, this Court
28 must examine whether there is substantial similarity in the two companies'

(1) managerial staff, (2) business property, (3) operations, (4) equipment, (5) customers, (6) supervisory staff, (7) ownership, and (8) labor relations policies.  *Haley & Haley, Inc. v. NLRB*, 880 F.2d 1147, 1149-50 (9th Cir. 1989).

Request 2 seeks documents relating to the corporate organizational structure of *ANY* business related to PMT.  (*See* Dkt. #26-1.)  PMT has provided a document reflecting the corporate organization structure of PMT and ComTrans, the only entities named in the underlying complaint.  (*Id.* at 2.)  The NLRB cannot show that information on other businesses is relevant to the alter ego issue under the above-referenced factors.

Request 6 seeks documents reflecting *ALL* of PMT's assets.  (*Id.* at 4.)  Were the request tailored toward and relevant to the "alter ego" issue, it would seek documents reflecting assets used jointly by both ComTrans and PMT.  Instead, it asks for documentation on *ALL* of PMT's assets, whether or not they were allegedly commonly or jointly used by ComTrans and PMT.  Again, the NLRB cannot show that the information sought is relevant under the alter ego test.

Request 24 seeks "all licenses, permits . . . or other documents constituting an authorization to operate any business" held by or issued to Respondent PMT, and/or Respondent Comtrans, and/or Bob Ramsey, and/or Pat Cantelme. . .."  (*Id.* at 15.) Again, this request seeks information on businesses other than PMT or ComTrans.  The NLRB cannot show that any such information is relevant to the issues in the underlying Complaint.  This request illustrates the NLRB's "fishing expedition" in relation to this subpoena.  "An administrative subpoena thus may not be so broad so as to be in the nature of a 'fishing expedition.' "  *Peters v. United States,* 853 F.2d 692, 700 (9th Cir.1988).  The Court should refuse to enforce subpoena Requests 2, 6, 8, 10, 11, 14, 19, 24, 27, 33, and 38-39 because they seek information with little or no relevance and are unduly burdensome.

### C. Requests 6, 8, 10-11, 14, and 27 seek confidential information and should not be enforced.

In addition to the above-referenced objections, several of the subpoena requests

seek confidential information. The Invoices sought via Requests 8, 11, 14, and 27 also contain highly sensitive business information, which, if revealed to PMT's competitors, would cause significant harm to its competitive position in the market. PMT is entitled to protection from the disclosure of these documents. *See, e.g., Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (party entitled to protection from disclosure of trade secrets and confidential information); *NLRB v. Cable Car Advertisers*, Inc., 319 F. Supp. 2d 991, 999 (N.D. Cal. 2004) (recognizing a company's privacy interests in customer records.). Were the Invoices viewed in aggregate by PMT's competitors, PMT's competitors could use the information gleaned from the Invoices to target facilities at which PMT has a significant presence. (*See* Dkt. #24 at 1, ¶¶ 47-49.) This information is not currently known to the general public or to PMT's competitors. *Id.*

Request 6 seeks an inventory of all of PMT's assets. The detailed information on PMT's business dealings is confidential and proprietary. For example, the request seeks PMT's lease documents. Each lease contains information that is confidential, private, and highly sensitive. (Ex. A at ¶ 55.) The confidential information includes the term of the lease, the commencement and termination dates, the base rent, the broker, and the renewal provisions (collectively, the "Confidential Lease Information"). (*Id.* at ¶ 56.) Disclosure of the Confidential Lease Information would cause significant harm to PMT because PMT relies on its bargaining power to maintain a competitive edge in the market. (*Id.* at ¶ 57.) If PMT's competitors were to have access to the Confidential Lease Information, PMT's competitors could use the information to compete for the leased premises and compete for PMT's customers with an unfair advantage by knowing PMT's internal operating expenses. (*See Id.* at ¶ 58.) PMT's concerns regarding the confidential information are legitimate as evidenced by the presence of representatives/agents from PMT's primary competitor, Southwest Ambulance, at the hearings in this matter.

Because the foregoing requests contain confidential information, the Court should not enforce the requests. In the alternative, if the requested information is required to be produced, PMT is entitled to a protective order as outlined in PMT's Motion for Protective Order and Reply thereto, incorporated herein by this reference.

### D. Requests 2, 10, 12, 15, 18, 19, 24, 33, and 38-39 have been complied with or substantially complied with.

Despite PMT's reservations of its objections based on relevance, confidentiality, or burdensomeness, PMT has either provided documents or indicated that none exist, regarding the NLRB's inquiries related to the above-referenced requests. (*See* Dkt. #26-1.) The NLRB has not shown why PMT's responses to its requests are insufficient. Accordingly, the Court should not enforce the requests.

### IV. Conclusion

For the foregoing reasons, PMT requests that the Court issue its Order declining enforcement of the subpoena. Because PMT has already produced the relevant documents that are not unduly burdensome, there is nothing for the Court to enforce.

**RESPECTFULLY SUBMITTED** this 27th day of August 2010.

**SHERMAN & HOWARD L.L.C.**

By /s/ Arthur W. Pederson
Arthur W. Pederson
Thomas J. Kennedy
Michael C. Grubbs
2800 North Central Avenue, Suite 1100
Phoenix, AZ 85004-1043
Attorneys for Professional Medical Transport, Inc. and Bob Ramsey

I hereby certify that on August 27, 2010, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

By: /s/ Deborah M. Alexander

831109.1 \ 087465.002 (08/27/10)

10